**STATE of Minnesota, Respondent,**

**v.**

**Cordova Jamal LYNCH, Appellant.**

**No. C9–88–2590.**

Court of Appeals of Minnesota.

Aug. 8, 1989.

Review Denied Sept. 15, 1989.

Hubert H. Humphrey, III, Minnesota Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Lee W. Barry, Sr. Atty., Minneapolis, for respondent.

C. Paul Jones, Minnesota State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ., without oral argument.

## OPINION

NIERENGARTEN, Judge.

Cordova Jamal Lynch was found guilty of two counts of second degree assault and one count of first degree criminal damage to property, and sentenced to two consecutive terms of 60 months each for the assault convictions. Lynch appeals the trial court's denial of certain pre-trial motions.

## FACTS

Robert Smith and Marion Gilchrist got into an argument with appellant Cordova Lynch at an auto body shop. Later, as Smith and Gilchrist were driving along Plymouth Avenue, they spotted Lynch driving toward them in a gray Grand Am followed by Dedrick Mays, another acquaintance. Lynch made a u-turn and followed Smith into an alley where Lynch fired three shots at them from a handgun. Smith drove out of the alley but Mays tried to block Smith's passage through an intersection. Smith avoided Mays' car and telephoned the police.

Officer Falkowski responded to the call, and spotted Lynch and Mays just getting out of their cars, a few blocks away. Falkowski apprehended Mays, but Lynch got away. Falkowski found a loaded .357 Magnum handgun under the front passenger seat of Mays' car. Subsequent testing of a bullet fragment found in the back seat of Smith's car indicated that the bullet had been fired from the Magnum. Officer Falkowski then radioed for assistance.

Relying on a description given him by Falkowski, Officer Johnsrud found Lynch seated in a different car about a block away and arrested him. Lynch later admitted to the police that he had been at the auto body shop and that he had driven the gray Grand Am, but denied chasing Smith and Gilchrist or shooting at them.

Lynch was convicted of two counts of second degree assault and one count of criminal damage to property. Before trial, Lynch objected to the state's use of a peremptory challenge to strike a black man from the jury panel. The trial court overruled the objection. The court also denied Lynch's discovery motion and ruled his prior assault convictions admissible for purposes of impeachment. Lynch did not testify at trial, but did present testimony that he had been at his girlfriend's house at the time of the alleged offenses.

## ISSUES

I. Did the trial court err in overruling appellant's objection to the state's use of a peremptory challenge to strike one of two black people from the venire panel?

II. Did the trial court err in refusing to grant appellant's counsel access to police

records which possibly contained references to gang-related activities of the complainants, or in the alternative, to conduct an *in camera* review of the records?

III. Did the trial court abuse its discretion by permitting impeachment use of appellant's 1986 assault convictions had appellant taken the stand during trial?

## ANALYSIS

### 1. *The peremptory challenge*

Lynch is a black man. Two of the 25 members of the venire panel were black. The state used its first of three peremptory challenges to strike one of the black veniremembers from the panel. Lynch's counsel objected, contending that the strike was purposeful discrimination warranting a new trial. The court overruled the objection.

■ Individual jurors may not be struck because of race alone.

The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race or on the false assumption that members of his race as a group are not qualified to serve as jurors.

*Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986) (citations omitted).

■ To show discrimination Lynch must first establish a prima facie case of purposeful discrimination.

To establish such a case, the defendant first must show that he is a member of a cognizable racial group. * * * Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to

exclude the veniremen from the * * * jury on account of their race.

*Id.* at 96, 106 S.Ct. at 1722 (citations omitted).

■ The trial court should consider all relevant circumstances such as whether the selection indicates a pattern of strikes against black jurors, or whether the prosecutor's questions and statements during *voir dire* support or refute an inference of discriminatory purpose. *Id.* at 96–97, 106 S.Ct. at 1722–1723. Once a defendant makes a prima facie case for discrimination, it is up to the state to "come forward with a neutral explanation for challenging black jurors." *Id.* at 97, 106 S.Ct. at 1723. This explanation, however, need not rise to the level justifying exercise of a challenge for cause. *Id.*

■ Although one of the black veniremembers was struck from the jury, one black woman remained on the panel. We need not be solely influenced by numbers. A specific mathematical formula is not required. *U.S. v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987). Excluding one of two black veniremembers falls short of raising an inference of purposeful discrimination necessary to establish a prima facie case under *Batson*. *U.S. v. Porter*, 831 F.2d 760, 767–68 (8th Cir.1987).

■ Even if Lynch did present a prima facie case for discrimination, the record indicates that the prosecutor articulated "a clear and reasonably specific and neutral explanation for the peremptory challenge." *Porter*, 831 F.2d at 767. Just before trial the prosecutor summarized her objections for the record.

Of all the jurors that the State had to choose from and the State is required to strike three people, [Evan's] explanations were the weakest as to his lifestyle and how he was maintaining it. And the State felt justified in striking him as a peremptory challenge due to his lack of satisfactory explanation of why he's currently unemployed and why he would choose to work at Burger King rather

than Pillsbury or drive a school bus rather than work at Pillsbury.

The prosecutor articulated subjective but nondiscriminatory reasons for the challenge and we find no error in the court's overruling of Lynch's objection.

## 2. *Access to police records*

■ Lynch next contends the trial court erred by refusing either to permit Lynch's attorney access to police records of gang activities, or, in the alternative, to inspect the documents *in camera,* in order to determine whether the records contained evidence of Smith's bias toward Lynch that could be used for impeachment purposes at trial.

■ The rules of criminal procedure allow for broad discovery, *State v. Paradee,* 403 N.W.2d 640, 642 (Minn.1987), but they require that the requested documents "relate to the guilt or innocence of the defendant or negate the guilt or reduce the culpability of the defendant as to the offense charged." Minn.R.Crim.P. 9.01, subd. 2.

■ The requested material must not only be relevant, but the request itself must be reasonably specific. *See Paradee,* 403 N.W.2d at 641. If the material is sensitive or confidential in nature, the court should inspect the material *in camera. Id.* at 642.

The trial court denied the request because it found the requested materials not relevant to the issues in the case. We agree that Lynch's request is neither specific nor relevant, and find the trial court did not err in denying the request.

## 3. *Impeachment by prior convictions*

Lynch further asserts that the court erred in permitting impeachment use of his 1986 convictions for second and third degree assault, and argues that the error requires a new trial.

■ Use of prior convictions for impeachment purposes is governed by the rules of evidence and subject to the trial court's determination that the probative value of admitting the evidence is not outweighed by its prejudicial effect. Minn.R. Evid. 609(a). *See State v. Jones,* 271 N.W.2d 534 (Minn.1978). The trial court's ruling must be upheld unless a clear abuse of discretion is shown. *State v. Lloyd,* 345 N.W.2d 240, 246 (Minn.1984). Where the defendant's credibility is a central issue and the need for impeachment testimony is great, but the key factor weighing against admission of the prior conviction is the fact that the prior crime is similar to the crime with which the defendant is charged, the trial court must give cautionary instructions to the jury to consider the prior conviction for impeachment purposes only. *Id.* at 247.

■ Although the trial court's ruling in this case deterred Lynch from taking the witness stand, it did not prevent testimony by other witnesses on his behalf. Lynch's alibi defense, for instance, was related by his girlfriend and her friend. The court concluded that the probative value of the convictions would not be outweighed by their prejudicial effect. Finally, the court said it would give the jury cautionary instructions about the use of the convictions for impeachment purposes only, should Lynch take the stand. The court did not abuse its discretion in admitting the testimony.

## DECISION

The trial court did not err in overruling appellant's objection to the prosecutor's use of a peremptory challenge to strike one of two black veniremembers from the jury panel where appellant failed to make a prima facie case of racial discrimination. The court also did not err in refusing appellant's request for access to police records which possibly contained references to the complainants' gang-related activities, since there was other evidence of complainants' bias toward appellant. Finally, the trial court did not abuse its discretion by admit-

ting evidence of appellant's prior assault convictions, for the court properly concluded the probative value of the prior convictions would not be outweighed by their prejudicial value. The decisions of the trial court are affirmed.

Affirmed.