In re COMMISSIONER OF PUBLIC SAFETY, Petitioner.

Dale Lee Underdahl, Respondent,

v.

Commissioner of Public Safety, Appellant.

No. A06–1000.

Supreme Court of Minnesota.

July 26, 2007.

Lori Swanson, Attorney General, Ken B. Peterson, Deputy Attorney General, Jeffrey F. Lebowski, Peter D. Magnuson, Assistant Attorneys General, St. Paul, MN, for Appellant.

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, MN, for Respondent.

## OPINION

PAGE, Justice.

Respondent Dale Lee Underdahl was arrested for driving while intoxicated and submitted to a breath test using the Minnesota model of the Intoxilyzer 5000EN (hereinafter, Intoxilyzer 5000EN). At his implied consent hearing, Underdahl made a discovery motion that included, among the items sought, the "complete computer source code for the [Intoxilyzer 5000EN] currently in use in the State of Minnesota." In granting the motion, the district court ordered that appellant, the Commissioner of Public Safety, provide Underdahl with an operational Intoxilyzer 5000EN instrument and "the complete computer source code for the operation of the [Intoxilyzer 5000EN]."

In response to the district court's order, the commissioner petitioned the court of appeals for a writ of prohibition to prevent the district court from enforcing the order on the grounds that the district court "exceeded its jurisdictional authority and ordered the production of information clearly not discoverable." The court of appeals concluded that the district court had jurisdiction over the discovery dispute and that the commissioner failed to establish that the district court improperly issued the discovery order. *In re Comm'r of Pub. Safety, Underdahl v. Comm'r of Pub. Safety,* — N.W.2d —, No. A06–1000, order at 2–3 (Minn.App. July 18, 2006) (denying writ of prohibition). For the reasons discussed below, we affirm.

Between 1983 and 1997, law enforcement officials in the State of Minnesota used the Intoxilyzer 5000 series 64 and 66 to conduct breath tests of drivers suspected of driving under the influence of alcohol. *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 437 (Minn.2002). In 1996, the state decided to replace the Intoxilyzer 5000 series 64 and 66 models with a new

testing device and issued a request for proposal (RFP) for new breath-testing instruments. In a letter accompanying the RFP, the state explained that the RFP detailed the "relationship to be established between the State and a vendor which provides Evidentiary Breath Alcohol Test Instruments" and specifically indicated that "[t]he RFP also specifie[d] contractual conditions." In the RFP, the state included a provision titled "ownership of copyright." According to the parties, that provision is relevant in this case to determine whether the source code for the Intoxilyzer 5000EN is discoverable from the state. The provision reads:

> All right, title, and interest in all copyrightable material which Contractor shall conceive or originate, either individually or jointly with others, and which arises out of the performance of this Contract, will be the property of the State and are by this Contract assigned to the State along with ownership of any and all copyrights in the copyrightable material[.] Contractor also agrees, upon the request of the State to execute all papers and perform all other acts necessary to assist the State to obtain and register copyrights on such materials. Where applicable, works of authorship created by Contractor for the State in performance of the Contract shall be considered "works for hire" as defined in the U.S. Copyright Act.

The RFP also requires the winning contractor to agree to provide

> information * * * including statement of all non-disclosure/non-reproduction agreements required to obtain information, fees and deposits required, to be used by attorneys representing individuals charged with crimes in which a test with the proposed instrument is part of the evidence. This part of the contract to be activated with an order from the

court with jurisdiction of the case and include a reduced fee schedule for defendants found by the court to be entitled to a publicly funded defense.

CMI Incorporated (CMI) submitted the winning proposal. The parties do not dispute that the commissioner subsequently approved the Intoxilyzer 5000EN model developed by CMI for statewide use. *See* Minn. R. 7502.0420, subp. 3 (2005).

On February 18, 2006, respondent Dale Lee Underdahl was arrested for driving while intoxicated. Underdahl submitted to a breath test using the Intoxilyzer 5000EN. In an implied consent hearing in Dakota County District Court, Underdahl made a motion seeking additional discovery, including the "complete computer source code" for the Intoxilyzer 5000EN. In its May 2, 2006, order, the district court ordered the commissioner to provide Underdahl with an operational Intoxilyzer 5000EN instrument, "together with all necessary peripherals, including, but not limited to, a supply of simulator solution, the simulator apparatus, internal modem, printer, and supply of mouth pieces." The court also ordered that the commissioner "obtain and provide to [Underdahl's] counsel the complete computer source code for the operation of the Minnesota model of the Intoxilyzer 5000 currently in use in the State of Minnesota." The order was based on the district court's conclusion that the state owned the source code for the Intoxilyzer 5000EN model created exclusively for the state. In support of that conclusion, the court cited the "ownership of copyright" provision in the RFP. In reaching that conclusion, the court also stated that it could see no reason "why drivers tested using that instrument should not have full access to all of the information employed by that instrument."

The commissioner subsequently petitioned the court of appeals for a writ of prohibition to prevent the district court from enforcing its discovery order. The commissioner essentially argued that the court of appeals should issue the writ of prohibition because Minn.Stat. § 634.16 (2006), which sets forth a presumption of reliability whereby the results of an infrared breath test are "admissible in evidence without antecedent expert testimony," divests the district court of jurisdiction to order the additional discovery. In the alternative, the commissioner argued that if the court had jurisdiction, it abused its discretion by ordering discovery of source code that the commissioner claimed was not in its possession, custody, or control and was, therefore, nondiscoverable. The commissioner also argued that due process did not require discovery of the source code because the code was proprietary to CMI and thus unavailable to the state. Underdahl argued that the district court had jurisdiction over his challenge to the reliability of his test results and that the court did not abuse its discretion in ordering the additional discovery.

The court of appeals denied the commissioner's petition, concluding first that the district court had jurisdiction to respond to Underdahl's challenge to the reliability of his test result. *In re Comm'r of Pub. Safety, Underdahl v. Comm'r of Pub. Safety*, No. A06–1000, at 3. In reaching this conclusion, the court explained that "respondent is raising challenges to his particular test results, which he may do pursuant to Minn.Stat. § 169A.53, subd. 3(b) (2004). These challenges are to be raised in the district court pursuant to Minn.Stat. § 169A.53, subd. 2 (2004)." *Id.* at 2. Based on the district court's finding that the source code was not proprietary, the court of appeals went on to conclude that the district court did not err in ordering discovery of the source code created specifically for the Minnesota model of the

Intoxilyzer. *Id.* at 3. In support of this conclusion, the court noted that the commissioner acknowledged that the state owned some portion of the source code. *Id.*

■■■ A writ of prohibition is an extraordinary remedy and is only used in extraordinary cases. *Thermorama, Inc. v. Shiller,* 271 Minn. 79, 83–84, 135 N.W.2d 43, 46 (1965). We will issue a writ of prohibition only when one of the following four circumstances applies:

it appears that the court is about to exceed its jurisdiction or where it appears the action of the court relates to a matter that is decisive of the case; where the court has ordered the production of information clearly not discoverable and there is no adequate remedy at law; or in rare instances where it will settle a rule of practice affecting all litigants.

*Id.* at 84; 135 N.W.2d at 46. The writ sought by the commissioner does not meet this test.

■■ First, we consider whether "it appears that the court is about to exceed its jurisdiction." *Id.* "Jurisdiction is a question of law that we review de novo." *Kellar v. Von Holtum,* 605 N.W.2d 696, 700 (Minn.2000), superseded on other grounds by Minn. R. Civ. P. 11.03. The commissioner argues, as he did in the court of appeals, that because section 634.16 establishes that an approved breath-testing instrument is presumed reliable, the only way to challenge the reliability of the instrument is to challenge the administrative rule that approved the instrument for statewide use. The commissioner then asserts that, because Minn.Stat. § 14.44 (2006) gives the court of appeals exclusive subject matter jurisdiction over challenges to administrative rules, the district court lacked jurisdiction to order discovery of the source code.

Minnesota Statutes § 634.16 provides that:

In any civil or criminal hearing or trial, the results of a breath test, when performed by a person who has been fully trained in the use of an infrared or other approved breath-testing instrument * * *, pursuant to training given or approved by the commissioner of public safety or the commissioner's acting agent, are admissible in evidence *without antecedent expert testimony that an infrared or other approved breath-testing instrument provides a trustworthy and reliable measure of the alcohol in the breath.*

(Emphasis added.) Minnesota Rule 7502.0420, subp. 3, is the rule approving the Intoxilyzer 5000EN for use throughout Minnesota. The commissioner reads the presumption of trustworthiness set forth in section 634.16 as taking away the district court's jurisdiction over challenges to the reliability of individual breath tests performed using the Intoxilyzer 5000EN. This reading is premised on the commissioner's conclusion that, once the department formally approves a breath-testing device, "[the device] is by definition deemed to be reliable under the statute." Therefore, the commissioner contends that the only way to challenge the reliability of such tests is to challenge Rule 7502.0420 in the court of appeals under Minn.Stat. § 14.44, which provides that the

validity of any rule may be determined upon the petition for a declaratory judgment thereon, *addressed to the Court of Appeals,* when it appears that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner.

(Emphasis added.)

Underdahl asserts that he is challenging his specific test results under Minn.Stat.

§ 169A.53, subd. 3(b) (2006), not the validity of Rule 7502.0240. Citing to Minn.Stat. § 169A.53, subds. 2 and 3 (2006), Underdahl argues that section 169A.53 specifically provides him with the right to challenge the validity of his test results in the district court. Section 169A.53, subdivision 2, provides that after a driver receives notice and order of the revocation of his or her license for driving under the influence of alcohol, the driver may seek judicial review of the revocation in the district court in the county where the alleged offense occurred. Section 169A.53, subdivision 3, limits the scope of that judicial review to ten specific issues. Subdivision 3(b)(10), which reads, "Was the testing method used valid and reliable and were the test results accurately evaluated?," permits the driver to challenge the validity of his or her test results.

▪ The commissioner's argument that Underdahl may only challenge the reliability of his test results by challenging the rule approving the Intoxilyzer 5000EN for statewide use relies on an overly expansive reading of section 634.16. Under section 634.16, the results of a breath test conducted with an approved testing instrument are admissible and presumed trustworthy and reliable "without antecedent expert testimony." But section 634.16's presumption of reliability may be challenged in a proceeding under section 169A.53, subdivision 3(b)(10), which specifically permits a driver to challenge the reliability and accuracy of his or her test results. Because Minn.Stat. § 169A.53, subd. 2, gives the district courts jurisdiction of section 169A.53, subdivision 3(b)(10), proceedings, the commissioner's argument that the district court lacks jurisdiction in this case necessarily fails.

▪ Second, in order to determine if a writ of prohibition may issue, we consider whether the order at issue relates to a matter that is decisive of the case. *Ther-morama,* 271 Minn. at 84, 135 N.W.2d at 46. Here, we conclude that it does not. The district court's discovery order addresses whether the source code for the Intoxilyzer 5000EN is discoverable. The issue to be addressed in the underlying implied consent hearing is whether Underdahl's test results are valid. Resolution of the pretrial discovery issue, however resolved, will not be dispositive of the underlying issue. It is enough to note that this is a pretrial matter seeking discovery of information that may or may not be admissible at trial.

▪ Third, we consider whether the district court's order mandated discovery of information that is clearly not discoverable and for which there is no adequate remedy at law. *Thermorama,* 271 Minn. at 84, 135 N.W.2d at 46. "[A] trial judge has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed." *Shetka v. Kueppers,* 454 N.W.2d 916, 921 (Minn. 1990). We review a district court's order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law. *See, e.g., Frauenshuh v. Giese,* 599 N.W.2d 153, 156 (Minn.1999), superseded in part on other grounds by Act of Apr. 27, 2000, ch. 444, art. 1, § 5, 2000 Minn. Laws. 980–984 (codified at Minn.Stat. § 518.18(d)(i) (2006)). "[D]iscovery rules are remedial and must be construed liberally." *Anderson v. Florence,* 288 Minn. 351, 361, 181 N.W.2d 873, 879 (1970). This is so because of the philosophy underlying our discovery rules that " 'a lawsuit should be an intensive search for the truth, not a game to be determined in outcome by consideration of tactics and surprise.' " *Id.* at 356, 181 N.W.2d at 876 (quoting David W. Louisell, *Discovery and Pre–Trial Under the*

*Minnesota Rules,* 36 Minn. L.Rev. 633, 639 (1951–52)).

■ Minnesota Rule of Civil Procedure 26.02(a) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party." Rule 26.02(a) further provides that the information sought need not be admissible at trial so long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." Minnesota Rule of Civil Procedure 34.01 provides that a party may serve a request for production of documents and tangible things "which constitute or contain matters within the scope of Rule 26.02 *and which are in the possession, custody or control of the party upon whom the request is served.*" (Emphasis added.) The party objecting to the production of information has the burden of establishing that the sought-after information is immune from discovery. *Brown v. St. Paul City Ry. Co.,* 241 Minn. 15, 35–36, 62 N.W.2d 688, 701–02 (1954).

■ The district court ordered the production of the "complete computer source code" for the Intoxilyzer 5000EN. In support of its order, the district court found that under the contract between the state and CMI, the state owned the source code for the Intoxilyzer 5000EN. The court of appeals concluded that the district court's finding was not clearly erroneous given the concession in the state's petition seeking the writ of prohibition that it owned that portion of the source code created exclusively for the Intoxilyzer 5000EN.

The commissioner does not specifically argue that the source code for the Intoxilyzer 5000EN is not discoverable under Rule 26.02; rather, the commissioner argues that the source code is not discoverable under Rule 34.01 because the source code is not within the commissioner's pos-session, custody, or control. The commissioner argues that ownership of the source code is determined according to the definition of derivative works under 17 U.S.C.A. § 101 (Thomson/West 2005). The commissioner argues that under federal copyright law, the state owns only a portion of the source code used in the Intoxilyzer 5000EN and, therefore, cannot comply with the district court's order to produce the complete source code. Underdahl responds by arguing that the "complete computer source code for the operation of the [Intoxilyzer 5000EN]" is a work for hire pursuant to 17 U.S.C.A. § 101, and that, as such, the district court did not abuse its discretion when it issued its discovery order.

Having carefully reviewed the record presented and the arguments of the parties, we conclude that we cannot decide the copyright issues raised. Although the parties direct us to copyright law regarding works for hire and derivative works, they provide only a superficial application of that law to the facts of this case. Perhaps that is because the factual record before us is inadequate, thereby making any determination regarding either copyright theory impossible.

■ Resolution of this issue, however, does not require us to apply federal copyright law because we also conclude that the commissioner has failed to meet his burden of demonstrating that the information sought is clearly not discoverable and that he has no adequate remedy at law. While on the one hand the commissioner argues that ownership of the source code for the Intoxilyzer 5000EN is to be determined under federal copyright law and that under that law he does not have possession, custody, or control of the source code, on the other hand he concedes that the state owns and thus controls some

portion of the source code. That concession is supported by the express language of the RFP granting CMI the right to supply the Intoxilyzer 5000EN to the state. Further, given the express language of the RFP that requires CMI to provide the state with "information * * * to be used by attorneys representing individuals charged with crimes in which a test with the [Intoxilyzer 5000EN] is part of the evidence" when production of the information is mandated by court order "from the court with jurisdiction of the case," it is not clear to us that the commissioner is unable to comply with the district court's order. Accordingly, we cannot conclude that the district court ordered the production of information that is clearly not discoverable.

We conclude that the commissioner failed to demonstrate that he has no adequate remedy at law. The commissioner concedes that he could sue CMI to "force it to turn over 'the complete computer source code.'" However, the commissioner asserts that a lawsuit compelling CMI to turn over the source code does not constitute an adequate legal remedy because the commissioner does not believe he is entitled to the source code and thus a lawsuit seeking it would be frivolous, therefore exposing the commissioner to sanctions. The commissioner asserts that the only other remedy would be to appeal a final order, which he asserts is inadequate because it would not address the "statewide concerns" at issue in this case. We do not agree that the commissioner lacks adequate remedies at law. As discussed above, irrespective of whether the state owns any portion of the source code, CMI agreed, in the RFP, to provide the attorneys representing individuals charged with

crimes "in which a test with the [Intoxilyzer 5000EN] is part of the evidence" information necessary to comply with a court's order. We conclude that the commissioner's ability to enforce its contract with CMI constitutes an adequate legal remedy.[1]

█ We turn finally to whether the issue in the case relates to a rule of practice affecting all litigants. *Thermorama,* 271 Minn. at 84, 135 N.W.2d at 46. It is enough to say that this case does not raise any issue relating to a rule of practice affecting all litigants.

Thus, none of the four circumstances justifying the issuance of a writ of prohibition under *Thermorama,* 271 Minn. at 84, 135 N.W.2d at 46, are present in this case. We, therefore, hold that the court of appeals properly denied the commissioner's petition for a writ of prohibition.

Affirmed.

---

1. This example is not intended to convey that the commissioner has only one adequate legal remedy.