**STATE of Minnesota, Appellant,**

v.

**Dale Lee UNDERDAHL, Respondent,**

**Timothy Arlen Brunner, Respondent.**

**Nos. A07–2293, A07–2428.**

Court of Appeals of Minnesota.

May 20, 2008.

Lori Swanson, Attorney General, St. Paul, MN and James C. Backstrom, Dakota County Attorney, Jessica A. Bierwerth, Helen R. Brosnahan, Assistant County Attorneys, Hastings, MN, for appellant.

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, MN, for respondent Dale Lee Underdahl.

Derek A. Patrin, Meaney & Patrin, P.A., Hopkins, MN, for respondent Timothy Arlen Brunner.

Considered and decided by PETERSON, Presiding Judge; TOUSSAINT, Chief Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

In this consolidated appeal from pretrial orders granting defense motions for disclosure of the computer source code for the Minnesota Model of the Intoxilyzer 5000EN, the state argues that the district court abused its discretion in ordering discovery because respondents failed to show that the source code is relevant and in the state's possession or control. The state asserts that due process does not require disclosure of the source code. Because respondents made an insufficient showing that the source code may relate to their guilt or innocence, we reverse.

## FACTS

These appeals are taken from the district court's decisions to grant respondents' motions to discover the source code for the Minnesota Model of the Intoxilyzer 5000EN (Intoxilyzer), the machine used to test respondents' breath for alcohol concentration. Respondents Timothy Arlen Brunner and Dale Lee Underdahl were each charged with driving while impaired after the Intoxilyzer tests registered an alcohol concentration above .08. During pretrial proceedings, respondents anticipated the state's evidence of the Intoxilyzer test readings and moved for discovery of the computer source code, the original text of the computer program by which the instrument operates.

The state opposed respondents' motions, arguing that the source code was not relevant and, in any event, was not within its possession or control. The district court disagreed in both cases, finding the source code discoverable and rejecting the state's possession or control argument. The court found that respondent Brunner "cannot assess the reliability of the testing method without access to the software that controls the testing process." In its conclusion regarding respondent Underdahl,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the court stated that "[b]ecause the Intoxilyzer [ ] provides the only evidence of [Underdahl's] alcohol concentration that may be used to prove his guilt, evidence regarding the operation of that instrument is relevant to this case." The state appeals from both decisions.

## ISSUE

Did respondents make an adequate showing that the Intoxilyzer source code may relate to their guilt or innocence so as to require the state to disclose it?'

## ANALYSIS

The state argues that the district court in each case erred in granting additional discovery because respondents have not shown that the source code is relevant. They also assert that the source code is not in the state's possession or control, that it is available to respondents, and that due process does not require that the source code be disclosed.

██ The district court has wide discretion in granting or denying a discovery request and, absent a clear abuse of discretion, that decision will generally be affirmed. *State v. Willis,* 559 N.W.2d 693, 698 (Minn.1997); *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen,* 454 N.W.2d 916, 921 (Minn.1990). We review a district court's evidentiary rulings for an abuse of discretion, determining whether "the district court acted arbitrarily, capriciously, or contrary to legal usage." *State v. Profit,* 591 N.W.2d 451, 464 n. 3 (Minn.1999) (quotation omitted).

██ The rules of criminal procedure allow for broad discovery. *See State v. Paradee,* 403 N.W.2d 640, 642 (Minn.1987). And limitations on discovery imposed through interpretation of the rules must rest on sound policy grounds. *State v. Deal,* 740 N.W.2d 755, 763 (Minn.2007)

(quoting *Anderson v. Florence,* 288 Minn. 351, 357, 181 N.W.2d 873, 877 (1970)). Nonetheless, "discovery rules are not meant to be used for fishing expeditions." *State v. Hunter,* 349 N.W.2d 865, 866 (Minn.App.1984).

Minn. R.Crim. P. 9.01 controls disclosure by the prosecution in gross misdemeanor and felony cases, and makes certain disclosures mandatory. Other disclosures are discretionary and may be ordered by the court. *See id.,* subd. 2. Under the rule, the district court may exercise its discretion and require the prosecution to disclose material and information if the defendant shows "that the information may relate to the guilt or innocence of the defendant or negate the guilt or reduce the culpability of the defendant as to the offense charged." *Id.,* subd. 2(3). We have held that the request must call for relevant material and must be reasonably specific. *State v. Lynch,* 443 N.W.2d 848, 852 (Minn. App.1989), *review denied* (Minn. Sept. 15, 1989).

The state argues that the results of an Intoxilyzer breath test are presumed to be reliable under Minn.Stat. § 634.16 (2006), which allows the results of a breath test to be admitted "in evidence without antecedent expert testimony that an . . . approved breath-testing instrument provides a trustworthy and reliable measure of the alcohol in the breath." Indeed, the Minnesota Supreme Court recently referred to the statute's "presumption of reliability." *In re Comm'r of Pub. Safety,* 735 N.W.2d 706, 711 (Minn.2007) (*Underdahl I* ).

In *Underdahl I,* the supreme court affirmed this court's denial of the commissioner's petition for a writ of prohibition to prevent the district court from enforcing its order granting Underdahl's motion for discovery of the source code. *Id.* at 708. But the court did not, as respondents

claim, determine that the source code had been shown to "relate to the guilt or innocence of the defendant," under Minn. R.Crim. P. 9.01, subd. 2(3). The supreme court in *Underdahl I,* reviewing only the denial of a petition for prohibition, and thus examining whether the district court could act on challenges to the Intoxilyzer, did not reach the question of what showing of relevancy might be necessary to entitle a driver, in either a criminal or implied consent proceeding, to discovery of the source code. *See id.* at 711 (holding that the implied consent statute permits a challenge to the reliability of the test, and that a declaratory judgment action is not the sole means of challenge).

The *Underdahl I* court addressed the commissioner's argument that the "presumption of trustworthiness" provided in Minn.Stat. § 634.16 "[took] away the district court's jurisdiction over challenges to the reliability of individual [Intoxilyzer] breath results." *Underdahl I,* 735 N.W.2d at 710. The court noted that a driver may challenge the reliability of the test method under Minn.Stat. § 169A.53, subd. 3(b)(10). *Id.* at 711. The court held that "the commissioner's argument that the district court lacks jurisdiction" over such a challenge "necessarily fails." *Id.* But the court did not decide, nor did it discuss the extent of the showing that a driver making a challenge under that statute might be required to make in order to obtain discovery of the source code.[1]

■ In these cases, respondents Brunner and Underdahl made inadequate showings in the district court on the relevancy of the source code to a plausible challenge to the reliability of the Intoxilyzer. Respondent Brunner provided the district

court with a copy of the written testimony of Dr. David Wagner, a computer scientist, before a congressional committee inquiring into computerized voting systems. Although this testimony includes some explanation of what a "source code" is in general, it has no specific application to the Intoxilyzer or to the operation of breath-testing instruments. Respondent Brunner did not provide any affidavit from an expert on the design or operation of the Intoxilyzer or breath-testing instruments more generally. Accordingly, the district court was without any record from which to determine that the disclosure of the source code would "relate to the guilt or innocence of the defendant," or would lead to the discovery or development of admissible evidence on the reliability of the Intoxilyzer.

■ Respondent Underdahl also failed to make an adequate record in the district court. Underdahl did not even make a showing on the background of source codes generally, which the Wagner document in the Brunner file at least provides. As in the Brunner file, the only expert affidavit bearing directly on the Intoxilyzer source code comes from Glenn Hardin, a BCA toxicology supervisor, stating that the BCA conducted extensive instrument validation testing as part of the Intoxilyzer approval process, that the results of the testing provided no reason to doubt the accuracy and reliability of the test results, and that the validation testing "was performed without access to the source code."

We have no occasion on these records to attempt defining what showing would be necessary to justify requiring disclosure of the Intoxilyzer source code. As the *Underdahl* record confirms, the Intoxilyzer

---

1. When it came to discussing whether the source code was "clearly not discoverable," the standard for a writ of prohibition, the court discussed whether the source code was in the "possession or control" of the commissioner, but not whether, or to what degree, it might be relevant. *Underdahl I,* 735 N.W.2d at 711–12.

instrument underwent significant testing in an accepted process prior to approval for statewide use. *See generally Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 438–40 (Minn.2002). And each time the instrument is used, diagnostic tests are performed to ensure the reliability of the test results. *See Kramer v. Comm'r of Pub. Safety,* 706 N.W.2d 231, 236 (Minn. App.2005).

As prescribed by statute, the Intoxilyzer delivers a test result with the appearance of scientific reliability, without any expert witness being required to testify to the reliability of the result or the reason for each step in the process. Respondents' arguments in effect compare the instrument to a scientific laboratory and the source code to a procedure performed in such a laboratory. Without a more detailed showing of the relevancy of the source code, their arguments tend to aim more at the validity of an automated testing process, rather than at the need for discovery of one of its component pieces. And even if the Intoxilyzer is compared to an independent scientific laboratory conducting measurable operations, the supreme court has rejected the view that the defense is entitled to disclosure of every aspect of those operations. *See State v. Traylor,* 656 N.W.2d 885, 900 (Minn.2003) (holding that DNA PCR–STR test results were admissible despite the defense's lack of access to test-kit primer sequences or validation studies that the state's experts also lacked access to); *cf. State v. Alt,* 504 N.W.2d 38, 48–49 (Minn.App.) (holding that denial of access to the FBI lab's DNA data bases did not make its test results inadmissible), *review granted and remanded on other grounds,* 505 N.W.2d 72 (Minn. 1993).

■ Thus, respondents have not shown what an Intoxilyzer "source code" is, how it bears on the operation of the Intoxilyzer, or what precise role it has in regulating the accuracy of the machine. Accordingly, there is no showing as to what possible deficiencies could be found in a source code, how significant any deficiencies might be to the accuracy of the machine's results, or that testing of the machine, which defendants are permitted to do, would not reveal potential inaccuracies without access to the source code.

Anticipating that they may not have met their burden for a rule 9 showing that the source code may relate to their guilt or innocence, respondents argue that their burden is actually less—that they merely have to show that the source code is relevant because it is something an expert would ordinarily explore in assessing the reliability of a testing instrument.[2] But respondents also have failed to meet this lesser burden; they have not established that they need the source code to see whether it might be relevant. Were we to hold that respondents' speculations satisfy their burden under rule 9, this case would be a prelude to similar, speculative challenges on other aspects of the design and manufacture of Intoxilyzers. Rule 9 is not authority for obtaining information on a mere assertion that it has something to do with the defendant's guilt.

**2.** As suggested in this opinion, the record shows that the state went through an extensive testing process before it approved the Intoxilyzer as an appropriate breath testing instrument for use in DWI proceedings. *See* Minn. R. 7502.0420, subp. 3 (2007); *see also* Minn.Stat. § 169A.75(c) (2006) (authorizing the Commissioner of Public Safety to approve instruments for preliminary screening or chemical tests for intoxication). This process was performed without access to the source code. Respondents' argument, therefore, is essentially a challenge to the state's approval process.

## DECISION

Granting respondents' motions to discover the Intoxilyzer source code was an abuse of discretion. Because we conclude that respondents failed to show that the source code is relevant and thereby discoverable, we do not reach appellant's remaining arguments.

**Reversed.**