ANDERSON, Justice.
The issue presented here is whether a defendant has the right to inspect a crime scene that is in the control of a third party. Appellant/cross-respondent Blair Bruce Lee was convicted of first-degree criminal sexual conduct and domestic assault by strangulation. Lee argues that the denial of his motions to inspect the crime scene violated Minn. R. Crim. P. 9.01 and his constitutional rights to due process and effective assistance of counsel. The court of appeals held that Lee had a right under Minn. R. Crim. P. 9.01, subds. 1-1a, to inspect the crime scene, but that Lee was not entitled to a new trial because the denial of his motions to inspect was harmless. We hold that Minn. R. Crim. P. 9.01, subds. 1-1a, does not authorize an inspection of a crime scene in the control of a third party. We further hold that even if Lee had a constitutional right to inspect a *435 crime scene in the control of a third party, any error in denying that right was harmless beyond a reasonable doubt. We therefore affirm.
FACTS
Lee lived with his wife, S.M.L., and their children in a single-family house. As a result of a violent confrontation between Lee and S.M.L., Lee was charged with first-degree criminal sexual conduct, Minn. Stat. § 609.342, subd. 1(e)(i) (2018), and domestic assault by strangulation, Minn. Stat. § 609.2247, subd. 2 (2018).
Before trial, Lee moved to amend the pretrial conditions of release and domestic abuse no-contact order (DANCO) to allow his counsel and investigator to enter his former residence to inspect and photograph the crime scene.[1] Lee and S.M.L. leased the house as co-tenants, but the DANCO prevented Lee from residing at or accessing his former home or granting access to a third party. Lee argued that, without access to the residence, defense counsel "would not have the ability to fully cross-examine" S.M.L. "about the events taking place within that residence." Defense counsel stated that "I may not know what I'm interested in. I may only know it when I see it." Defense counsel also stated that prohibiting him "from investigating and exploring and understanding the layout and the complexion of where this alleged event took place" was "a deprivation and denial of [Lee's] due process rights." The district court denied the motion.
Lee sought a writ of prohibition from the court of appeals. In an order by a special term panel, the court of appeals held that the order denying Lee's motion was contrary to State v. Michael Gary Lee (Michael Gary Lee ), 461 N.W.2d 245 (Minn. App. 1990), under which Lee had a right to inspect the home. State v. Blair Bruce Lee , No. A16-1597, Order at 3 (Minn. App. filed Nov. 1, 2016). The court of appeals, however, denied the petition for a writ of prohibition. Id. at 4. It noted that although the first and second prongs required for a writ of prohibition were satisfied, Lee had not satisfied the third prong-that the district court's decision "must result in injury for which there was no adequate remedy." Id. at 4 (quoting State v. Turner , 550 N.W.2d 622, 625 (Minn. 1996) ). Because Lee could challenge the district court's discovery ruling "in an appeal from final judgment of conviction," the court of appeals held that he had not "demonstrated that the ordinary remedy of an appeal from judgment does not provide an adequate remedy." Id.
Following the denial of the writ of prohibition, Lee renewed his motion in the district court for access to the crime scene. Lee argued that he needed to inspect the crime scene in order to "undercut the credibility" of S.M.L. by showing "where objects are and walls are" and showing "spaces" and "dimensions" inside the home. Lee further argued that the court of appeals determined that the district court's original denial of the motion was contrary to law. The district court denied Lee's renewed motion.
At the jury trial, S.M.L. testified that Lee's assault began in the bedroom where he repeatedly poured water on her and then moved to the living room where he pinned her to the ground. He bit her breasts over her shirt and pulled her pants down. Lee forcibly pushed multiple fingers into S.M.L.'s anus as she struggled to free *436 herself. He also sought to penetrate her vagina with his fingers but was unable to do so because she was struggling. S.M.L. began to scream, and Lee covered her mouth with his other hand. S.M.L. tried to call out for the landlord, whose house was next door, but Lee pushed a towel onto her face. She testified that he said "die, die" while he held the towel, and she began to have trouble breathing.
Lee abruptly got off of S.M.L. and stood up. When S.M.L. stood up, Lee began hitting her in the chest and ribs and continued to punch her until her cell phone fell out of her pocket. Lee grabbed the cell phone and ran out of the house. S.M.L. eventually went back to bed after Lee left in his truck. She woke to Lee shining a light into her face and holding a cup of water in his hand. S.M.L. asked him where her phone was, and he said it was not on him, so she went outside to look for it. Lee followed her outside and told her he could kill her there, and no one would know. S.M.L. began to run and waited outside as Lee went back inside. She stayed outside until she heard her 2-year-old awake and Lee leave the house. Lee eventually returned and fell asleep on the couch.
The prosecutor asked S.M.L. to draw a picture of the layout of the home and went through the diagram with S.M.L., asking her to explain the drawing in detail to the jury. The prosecutor then asked S.M.L. to explain where everyone was in relation to the diagram on the day of the assault. At several points, using the diagram, the prosecutor asked S.M.L. to demonstrate where she was and where Lee was. On cross-examination, defense counsel asked S.M.L. about the layout of her house and pieces of furniture and other items inside it. Much of defense counsel's cross-examination emphasized that S.M.L. had not let the defense view the inside of her home, so the defense could not corroborate her story or compare her injuries to what Lee said happened.
S.M.L. testified that on the morning after the assault, which was a Saturday, she took her children to the library. She used a library phone to call her mother, who came to pick them up. That evening, S.M.L. and the children went to an emergency shelter for victims of domestic violence. On Monday, S.M.L. contacted the police, who referred her to the emergency room for a sexual assault exam.
The sexual assault nurse who examined S.M.L. testified that S.M.L. told her what had happened. S.M.L. had a swollen lip and "two little open areas" where she bit her lip; neck pain; an abrasion on her right mid-back; bruises on her chest, neck, arms, and legs; a pattern injury on her shoulder; and a broken finger. During a genital exam, the nurse found a one-centimeter, curved red line at the area behind where the labia come together. She testified that this injury was consistent with "a finger being pressed hard up against that area, because that tissue is really pretty fragile," though she acknowledged she could not definitively say that was the cause. The nurse also found a hematoma in S.M.L.'s anal canal. She testified that the hematoma was consistent with the assault that S.M.L. had described, although it also could be the result of a chronic bowel disease, such as Crohn's disease, or a history of constipation. The nurse took swabs and kept the clothing S.M.L. was wearing at the time of the assault.
Forensic scientists for the Minnesota Bureau of Criminal Apprehension testified that they examined the sexual assault kit, including several swabs, a DNA sample, and S.M.L.'s t-shirt and underwear. Testing on the t-shirt revealed amylase, which indicates possible presence of saliva, and a DNA profile to which both Lee and S.M.L.
*437 could be contributors that excluded 99.97% of the population.
The jury also heard that Lee had an assault conviction from 2015; during that assault, he head-butted S.M.L. and broke her nose. S.M.L. also testified that Lee made her listen to the recording of the report she made to the police for the 2015 assault and that he would laugh and say, "There's more where that came from." On another occasion, Lee hit S.M.L. with a child gate, breaking her hand. Lee also threatened to hurt S.M.L. and told her that if he ever got in trouble, he would publicly accuse her of sexually or physically abusing their children.
Lee testified that S.M.L. was the aggressor. He said that he did not come home until the early hours of the morning, and he sat on the couch and turned on the television and PlayStation. In response to an inquiry from S.M.L. as to where he had been, Lee told her it was none of her business. She turned off the television and stood in front of him. Lee had difficulty getting off the couch because he suffers from a herniated disk. He tried to get up, but S.M.L. pushed him back down. He rolled off the couch and started toward the kitchen. S.M.L. jumped in front of him. She blocked his path and began to chest-bump him. As Lee backed into a corner, S.M.L. followed him, taunting that if he hit her, "people will believe me over you."
When Lee got around her, he testified, he walked back toward the living room. S.M.L. kicked him in the lower back, and he fell to the ground. She jumped on top of him and hit the hutch with her knees as she did so. S.M.L. clawed at Lee's face, and Lee attempted to grab her arms. He pushed her in the chest, and her back hit the hutch. S.M.L. put Lee in a headlock and scratched at him every time he turned his head. He was making noise, so she grabbed his testicles and told him to shut up.
According to Lee, at this point their 2-year-old woke up, and S.M.L. stood up and went to the bedroom to soothe the child. Lee "army crawled" to the bathroom and tried to close the door. S.M.L. came back, grabbed the door, and Lee slammed the door on her finger as he shut the door. Lee remained in the bathroom until he heard S.M.L. nursing the baby. He went to the living room and fell asleep on the couch. S.M.L. and the children left the next morning.
Lee also testified that S.M.L. often suffered from constipation and that he advised her to take Metamucil.[2] Lee said that he had trouble walking and usually used either a walker or a cane. Both the defense attorney and the prosecutor asked Lee about the layout of the home and the location of various objects in the home.
After the defense rested, the State recalled S.M.L. She said that she had never suffered from "bouts of constipation" and had never taken Metamucil. She also testified that Lee did not have a walker in the house, nor had she observed him using a walker. He did have a cane, which she saw him use on one occasion. Defense counsel questioned S.M.L. several times about whether she had let anyone from the defense inside her home to look for these items.
The jury found Lee guilty of criminal sexual conduct and domestic assault by strangulation. The district court convicted Lee of both offenses and imposed the presumptive sentence for each.
The court of appeals affirmed Lee's convictions. State v. Blair Bruce Lee (Blair Bruce Lee) , No. A17-0534, 2018 WL 1145724, at *1 (Minn. App. Mar. 5, 2018).
*438 First, the court of appeals determined that the analysis of the district court order by the special term panel, in the context of the writ of prohibition, "plainly established the law of this case" with respect to whether Lee had a right to inspect the crime scene under Minn. R. Crim. P. 9.01. Blair Bruce Lee , 2018 WL 1145724, at *4. It held that the district court abused its discretion by disregarding the determination that controlling law required defense counsel to have reasonable access to the crime scene. Id. The court of appeals then concluded that even though the district court abused its discretion, there was no prejudice; it therefore affirmed. Id. at *5. The court of appeals did not address whether Lee had a constitutional right to inspect the crime scene. In a special concurrence, Judge Rodenberg stated that he would expressly limit or overrule Michael Gary Lee , 461 N.W.2d 245. Blair Bruce Lee , 2018 WL 1145724, at *6-9 (Rodenberg, J., concurring).
We granted Lee's petition for review.
ANALYSIS
This case presents two issues. First, whether Minn. R. Crim. P. 9.01, subds. 1-1a, requires the State to permit a defense inspection of a crime scene that is in the control of a third party. Second, whether it violates a defendant's constitutional rights under the United States and Minnesota Constitutions to due process and effective assistance of counsel to refuse a defense request to inspect a crime scene that is in the control of a third party. We address each issue in turn.[3]
I.
The district court " 'has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed.' " Sehlstrom v. Sehlstrom , 925 N.W.2d 233, 238 (Minn. 2019) (quoting In re Comm'r of Pub. Safety , 735 N.W.2d 706, 711 (Minn. 2007) ). We review a district court's discovery order for an abuse of discretion "by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." Comm'r of Pub. Safety , 735 N.W.2d at 711. We interpret rules of criminal procedure de novo. State v. Guzman , 892 N.W.2d 801, 809 (Minn. 2017).
Lee contends that Minn. R. Crim. P. 9.01 requires that the defense be permitted to inspect any place that relates to the case, whether or not it is within the prosecution's possession or control. Lee argues that the plain language of the rule-namely, subdivisions 1(3)(e) and 1a-supports this proposition. Lee asks us to adopt the rule the court of appeals applied in Michael Gary Lee , 461 N.W.2d 245, which interpreted Rule 9.01 and held that the criminal defendant in that case had a right to inspect a residential crime scene under appropriate conditions. Id. at 246-47.
The State counters that the plain language of Rule 9.01 does not authorize a *439 district court to require third parties to open their homes to a defense investigation. The State argues that, because the crime scene here was not within the prosecutor's possession or control, the State did not have the authority to allow access to it under Rule 9.01, subdivision 1, and had only a disclosure duty under Rule 9.01, subdivision 1(3)(e). The use of the word "allow" within the rule, the State argues, establishes that the State must have some authority over the place to which it is allowing access. The State contends that Michael Gary Lee is distinguishable from this case but also recommends that we overrule Michael Gary Lee .
A prosecutor is required to disclose and allow the inspection of certain matters without a court order. See Minn. R. Crim. P. 9.01, subds. 1-1a. A "prosecutor must, at the defendant's request ..., allow access at any reasonable time to all matters within the prosecutor's possession or control that relate to the case" and make certain disclosures, including "the location of buildings and places" that "relate to the case." Id. , subd. 1(3)(e). In addition, "[t]he prosecutor must allow the defendant ... to inspect and photograph any object, place, or building required to be disclosed under this rule." Id. , subd. 1a(2).
In interpreting the rules of criminal procedure, "we look first to the plain language of the rule and its purpose." Dahlin , 753 N.W.2d at 305. If the language is plain and unambiguous, we follow the plain language of the rule. State v. Petersen , 910 N.W.2d 1, 6 (Minn. 2018). "We interpret court rules in accordance with the rules of grammar and give words and phrases their common and approved usage." Dereje v. State , 837 N.W.2d 714, 720 (Minn. 2013) (quoting State v. Hohenwald , 815 N.W.2d 823, 829 (Minn. 2012) ).
It is clear that the obligation to disclose the location of buildings and places under Minn. R. Crim. P. 9.01, subd. 1(3)(e), includes all buildings and places that relate to the case, not just those within the prosecution's possession or control. Subdivision 1 states that the prosecutor must "allow access at any reasonable time to all matters within the prosecutor's possession or control that relate to the case ... and make the following disclosures" (emphasis added). Subdivision 1(3)(e), which addresses "the location of buildings and places" that "relate to the case," is one of those disclosures. A plain reading of this subdivision shows that the phrase "within the prosecutor's possession or control" applies only to the duty to allow access in the first clause, not to the disclosure duties of the second clause.
Although the rule creates an obligation for the prosecutor to disclose the location of the crime scene, it does not follow that the State must permit the defense to inspect a crime scene that is not within the prosecution's possession or control. Lee argues that Minn. R. Crim. P. 9.01, subd. 1a(2), gives the defendant the right to inspect a crime scene in the control of a third party. But the use of "allow" in the rule makes it clear that the State cannot be required to do something that is not within its power. See id. ("The prosecutor must allow the defendant ... to inspect and photograph any object, place, or building required to be disclosed under this rule" (emphasis added)). The word "allow" is defined as to "let (someone) have or do something." Concise Oxford English Dictionary 36 (11th ed. 2009). Put another way, the State is not empowered to force third parties to make private property available for inspection. Requiring otherwise would ignore the right of the property owner or tenant to exclude persons from his or her property. See Byrd v. United States , --- U.S. ----, 138 S. Ct. 1518, 1527, 200 L.Ed.2d 805 (2018) (" 'One of the *440 main rights attaching to property is the right to exclude others,' and, in the main, 'one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude.' " (quoting Rakas v. Illinois , 439 U.S. 128, 143, n.12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) )). Therefore, based on the plain language of Rule 9.01, subdivisions 1-1a, the State cannot be required to allow the defense to inspect a location that is under the control of a third party.
The court of appeals, relying on its precedent, held in a special term order that the defendant is entitled to an inspection of a crime scene even if that crime scene is a private residence. See Michael Gary Lee , 461 N.W.2d 245. We recognize that Michael Gary Lee is inconsistent with the plain language of the current version of Minn. R. Crim. P. 9.01 and, therefore, overrule that decision.
We hold that Minn. R. Crim. P. 9.01, subds. 1-1a, does not require the State to allow a defendant to inspect a crime scene that is in the control of a third party. Because S.M.L., and not the prosecutor, controlled access to her home, which in this case was also the crime scene, the district court did not abuse its discretion by denying Lee's motions to inspect the crime scene.
II.
Lee also argues that his rights to due process and effective assistance of counsel under both the United States and Minnesota Constitutions were violated by the denial of his motion to inspect the crime scene controlled by a third party. Lee contends that he had a constitutional right to inspect the crime scene because his counsel needed to understand the layout of the place where the alleged crime occurred, including spaces, dimensions, and where objects were located, in order to fully cross-examine S.M.L. and undercut her credibility. Lee also argues that his counsel needed to inspect the crime scene in order to photograph his walker and S.M.L.'s Metamucil, which would have supported his explanation of how the events occurred.
We need not decide whether Lee has the constitutional inspection rights that he asserts here. Even if we assume without deciding that Lee had these constitutional rights, any error in denying his motions to inspect the property was harmless beyond a reasonable doubt.
"When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt." State v. Davis , 820 N.W.2d 525, 533 (Minn. 2012). An error is harmless beyond a reasonable doubt when we are "satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, a [reasonable] jury ... would have reached the same verdict." State v. Post , 512 N.W.2d 99, 102 (Minn. 1994). But when "there is a reasonable possibility that the verdict might have been different if the evidence had been admitted," the error is prejudicial. Id. The error should be considered in the context "of all of the facts appearing in the record." State v. Robinson , 427 N.W.2d 217, 224 (Minn. 1988).
Here, there was very strong evidence of Lee's guilt. S.M.L. presented coherent, detailed testimony, little of which depended on the layout of the home. The nurse examiner testified that all of S.M.L.'s injuries were consistent with the assault that S.M.L. said occurred. The forensic evidence also strongly supported Lee's conviction and supported S.M.L.'s claim that Lee bit her breasts through her shirt. And *441 the jury heard evidence about other acts of violence that Lee committed against S.M.L., which bolstered S.M.L.'s credibility by placing her actions in the context of the relationship between Lee and S.M.L. Defense counsel had the opportunity to cross-examine S.M.L. about her refusal to permit inspection of the crime scene. Therefore, taking the evidence as a whole, a reasonable jury, beyond a reasonable doubt, would have reached the same verdict even if defense counsel had been permitted to inspect and photograph the home. See State v. McAllister , 862 N.W.2d 49, 62 (Minn. 2015) (holding that any error in the case "was harmless beyond a reasonable doubt because the verdict was surely unattributable to the error").
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
Concurring, Hudson, Thissen, JJ.
CONCURRENCE

There was no investigation of the crime scene-S.M.L.'s home-by either the prosecution or the defense, or by police officers, because S.M.L. reported the assault at a police station, and the police chose not to inspect the scene. The defendant's request to inspect the crime scene was made long after the disputed events at the crime scene took place.

Lee did not testify that S.M.L. actually ingested Metamucil.

We also granted the State's cross-petition for review on the issue of whether the special-term panel's analysis of the district court order in the context of the writ of prohibition established the law of this case with respect to whether Lee had a right to inspect the crime scene under Minn. R. Crim. P. 9.01. We may, however, review a decision of the court of appeals interpreting the law, "even if the court of appeals applied the law-of-the-case doctrine." State v. Dahlin , 753 N.W.2d 300, 305 n.7 (Minn. 2008). Thus, anything we might conclude about whether the court of appeals in Lee's direct appeal was required to follow the conclusion of its special-term panel regarding the scope of Rule 9.01 would be dicta. See State v. Hess , 684 N.W.2d 414, 421 n.6 (Minn. 2004) ("Considerations made in a judicial opinion that are unnecessary to the decision in the case are dicta."). As a result, it is unnecessary to address the law of the case issue.