Michael KNAPP, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. CX–98–2163.

Supreme Court of Minnesota.

April 20, 2000.

Mike Hatch, Attorney General, Michael R. Pahl, Assistant Attorney General, St. Paul, for appellant.

Alan J. Albrecht, Brooklyn Center, for respondent.

## OPINION

STRINGER, Justice.

Early in the morning of June 30, 1998, two Wright County sheriff's deputies were dispatched to check on the welfare of a person, later determined to be Michael Knapp (respondent), sleeping in the back seat of a parked car with the engine running. When respondent failed a preliminary breath test (PBT) administered by the deputy arriving first at the scene, he was warned by the deputy not to drive. A short time later, a second deputy who was aware of the warning observed respondent driving and arrested him on a charge of driving while under the influence of alcohol pursuant to Minn.Stat. § 169.121, subd. 1,[1] and respondent's license to drive was revoked pursuant to Minn.Stat. § 169.123 (1998).[2] Following the implied consent hearing the trial court upheld the revocation. The court of appeals reversed, the majority ruling that the second deputy did not have a factual basis for his suspicion that respondent was intoxicated when he stopped him. The Commissioner of Public Safety appeals, arguing that the deputy had a reasonable and articulable suspicion that respondent was intoxicated justifying the stop. We agree and reverse.

At around 6:30 in the morning of respondent's arrest, Deputy Holland had been on duty for about a half-hour when he was dispatched to check on the welfare of respondent, who was reported to be asleep in the back seat of his car with its engine running. Respondent's car was parked in a parking lot in Monticello, Minnesota shared by a municipal on-sale liquor store and Rhonda's Café, an eating establish-

1. "It is a crime for any person to drive, operate, or be in physical control of any motor vehicle within this state * * * when the person is under the influence of alcohol." Minn. Stat. § 169.121, subd. 1.

2. The provision states in relevant part:
   Subd. 2(a). Any person who drives, operates, or is in physical control of a motor vehicle within this state * * * consents, subject to the provisions of this section and sections 169.121 and 169.1211, to a chemical test of that person's blood, breath or urine for the purpose of determining the presence of alcohol * * *. The test may be required of a person when an officer has probable cause to believe the person was driving, operating or in physical control of a motor vehicle in violation of section 169.121 and * * * the screening test was administered and indicated an alcohol concentration of 0.10 or more.
   * * * *
   Subd. 5(a). On behalf of the commissioner of public safety, a peace officer requiring a test * * * shall serve immediate notice of intention to revoke and of revocation on a person * * * who submits to a test the results of which indicate an alcohol concentration of 0.10 or more.
   Minn.Stat. § 169.123.

ment. A second Wright County sheriff's deputy who had been working the night shift, Deputy Lang, also received the radio dispatch, arrived at the scene before Deputy Holland and administered a PBT on respondent. Respondent failed the test. Deputy Lang told respondent that he must either stay with his car, walk home or call for a ride. As Deputy Lang was speaking with respondent about his failing the PBT and his options, Deputy Holland arrived. Deputy Holland testified in the implied consent hearing on October 9, 1998, that when he arrived at the parking lot respondent's car was turned off, Deputy Lang had already administered a PBT on respondent, he overheard Deputy Lang tell respondent that he had failed the PBT and that Lang told Holland that respondent was unable to drive because he failed the test. However, Deputy Holland did not recall being told by Deputy Lang about other signs of intoxication exhibited by respondent, for example an odor of alcohol, bloodshot eyes or problems with balance and coordination. Deputy Holland further acknowledged that he could not personally verify that respondent exhibited signs of intoxication but he suspected respondent was guilty of driving while intoxicated based upon the information Deputy Lang provided and his knowledge that respondent was sleeping in his car.

Respondent appeared to be calling someone on his cell phone as the deputies left the parking lot driving separately in their squad cars and proceeded to a parking lot across an alleyway where they parked and exchanged information unrelated to respondent. Minutes later, respondent drove through the alley directly in front of the squad cars. Deputy Holland stopped respondent, arrested him for driving while intoxicated[3] and his driver's license was revoked pursuant to Minn.Stat. § 169.123 for driving a motor vehicle while intoxicated.

■ During the hearing respondent argued that there was no evidence supporting Deputy Lang's belief that respondent was intoxicated other than the fact that respondent was in the back seat of a car in the parking lot with the engine running, and this fact alone does not constitute probable cause to administer a PBT. Respondent further argued that because Deputy Holland's stop of respondent was based on an illegally administered PBT, there was no basis for Deputy Holland to stop respondent. Respondent argued that Deputy Holland's stop was illegal under the "fruit of the poisonous tree" doctrine.[4]

The trial court sustained the revocation of respondent's driving privileges under Minn.Stat. § 169.123, subd. 4(e) (1998).[5] The court of appeals reversed, holding that "[t]here [were] no facts . in the record showing or providing a basis for inferring that Lang had a specific and articulable suspicion that Knapp was under the influence of alcohol." *Knapp v. Commissioner of Pub. Safety*, 594 N.W.2d 239, 242 (Minn. App.1999). The majority of the court held that "[w]ithout such facts, an officer may not administer a PBT. Since Holland relied entirely on the impermissible PBT as his own 'reason to believe' that Knapp was under the influence, ultimately Holland's arrest lacked the requisite factual basis."

---

**3.** *See* Minn.Stat. § 169.121, subd. 1.

**4.** This doctrine concerns "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**5.** The provision states:

Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169.21 and that the person submitted to a test and the test results indicate an alcohol concentration of 0.10 or more * * * then the commissioner of public safety shall revoke the person's license or permit to drive * * * for a period of 90 days.
Minn.Stat. § 169.123, sub. 4(e).

*Id.* The dissent argued that Deputy Holland had probable cause to stop appellant based on information Deputy Lang provided him regarding the failed PBT and Deputy Holland's knowledge that appellant was in a liquor store parking lot, asleep in his car with the engine running. *See id.* The dissent also noted that Deputy Holland's stop may have been justified because respondent failed to obey a police order. *See id.*

The Commissioner now appeals, arguing that Deputy Holland had a reasonable basis to stop respondent and that respondent's reliance on the "fruit of the poisonous tree" doctrine is misplaced.

■ A stop is lawful if it is "based on a reasonable and articulable suspicion of ongoing criminal activity." *State v. Britton,* 604 N.W.2d 84, 89 (Minn.2000). In determining the propriety of investigative stops, "we review the events surrounding the stop and consider the totality of the circumstances in determining whether the police had a reasonable basis justifying the stop." *Id.* at 87 (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The factual basis required to support a stop is minimal. *See Marben v. State, Dept. of Pub. Safety,* 294 N.W.2d 697, 699 (Minn.1980). We look to the totality of the circumstances relating to Deputy Holland's stop and arrest to determine if it was based on a reasonable and articulable suspicion of illegal conduct. *See id.* (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). At the time Deputy Holland stopped respondent he knew that respondent had been sleeping in the back seat of a car with its engine running at 6:30 a.m. in the parking lot of a liquor store, he overheard Deputy Lang tell the respondent that he failed the PBT, he was told by Deputy Lang that respondent had been ordered not to drive, and within minutes he saw respondent drive directly in front of his squad car. Deputy Holland's knowledge that respondent failed the PBT was thus not only valid and admissible evidence in support of his stop and arrest of respondent–it was also one of many factors constituting the factual basis for his stop. Clearly Deputy Holland had a "reasonable and articulable suspicion" that respondent was intoxicated.

■ Respondent argues that the principal basis for the stop was Deputy Holland's information that respondent failed the PBT and that because there was no evidence in the record to justify administering the PBT in the first instance, it was unlawful and therefore Holland's stop was unlawful. We disagree. Even if the administration of the first PBT was not supported by sufficient evidence,[6] a dubious proposition given the facts here, we need not reach that issue because the "fruit of the poisonous tree" doctrine does not taint Deputy Holland's stop. In determining whether evidence is "fruit of the poisonous tree," the relevant concern is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *State v. Warndahl,* 436 N.W.2d 770, 775 (Minn.1989) (quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. 407). This court looks at several factors to determine whether the illegal evidence taints its fruits. "The factors include the purpose and flagrancy of the misconduct, the presence of intervening circumstances, whether it is likely that the evidence would have been obtained in the absence of the illegality and the temporal proximity of the illegality and the evidence alleged to be the fruit of the illegality." *Warndahl,* 436 N.W.2d at 776.

---

**6.** An officer requesting that an individual take a test for driving while intoxicated under the implied consent law has probable cause where "there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or was operating a motor vehicle on the highway while under the influence of an alcoholic beverage." *State v. Harris,* 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972).

Applying the *Warndahl* factors, there was no evidence of police misconduct and respondent driving his vehicle after being ordered not to by Officer Lang clearly is an intervening circumstance which in all likelihood would have made his intoxication discoverable by Deputy Holland wholly apart from any information about respondent failing the PBT. We hold the initial PBT is not a "poisonous tree" tainting Deputy Holland's stop of respondent and the revocation of respondent's driver's license was lawful.

We therefore reverse the order of the court of appeals and reinstate the trial court order of revocation of respondent's driver's license pursuant to Minn.Stat. § 169.123.

Reversed.