STATE of Minnesota, Respondent,

v.

Keith Edward MONTGOMERY,
Appellant.

No. A04–2050.

Court of Appeals of Minnesota.

Dec. 27, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Paul J. Kiltinen, Dodge County Attorney, Mantorville, MN, for respondent.

John M. Stuart, State Public Defender, Bridget Kearns Sabo, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; GORDON SHUMAKER, Judge; and HUDSON, Judge.

## OPINION

GORDON SHUMAKER, Judge.

A jury found appellant Keith Edward Montgomery guilty of first-degree and second-degree sale of a controlled substance. On appeal, he argues that the district court abused its discretion by admitting *Spreigl* evidence and by denying his motion for a mitigated sentencing departure. He also claims the prosecutor committed misconduct.

## FACTS

According to testimony in the trial that began on April 19, 2004, Brenda Peterson, a recovering drug user who worked as a police informant, received a telephone call from a man who identified himself as Hakeem. Peterson knew Hakeem to be Keith Montgomery, a person with whom she had had a personal relationship in the past. Hakeem wanted to sell to her an ounce of cocaine for $700 or $800, and they agreed that he would come the next day to Kasson, where Peterson lived, to make the sale. Peterson then notified the Kasson police, and they decided to equip her with a "wire" so that they could listen to further conversations she might have with Hakeem. Through additional calls, Peterson arranged to meet Hakeem at the carwash in Kasson.

The next day, Hakeem arrived in Kasson in a car driven by Hyson Harper and owned by Shawntan Smith's aunt. Hakeem sat in the front passenger seat and Smith was in the back. When Hakeem notified Peterson of his arrival, she directed him to go to the carwash.

At the carwash, Peterson got into the back seat of the car and sat next to Smith. She counted out the money for the cocaine and gave it to Smith. Smith, who was holding a napkin that he said contained the cocaine, handed the money back to her. Then Peterson saw the lights of police cars, and the police arrested the men.

Harper testified that he had not known Hakeem prior to this date but that he saw Hakeem put drugs in a glove and then place the glove somewhere under the hood of the car. When the police searched the car, they found a glove containing baggies of cocaine in the car's air-filter housing, and they found baggies without drugs in them in the backseat. None of the occupants of the car had actual possession of

any drugs, but Smith had $1,700 in his shoe. When originally questioned, Harper lied to the police about knowing that there were drugs in the car, but he maintained that he was not involved in a drug sale.

Montgomery testified that he ended his relationship with Peterson despite her many efforts to become intimate with him. He stated that, at the time in question, it was Peterson who contacted him and that she asked him to come and see her. He told her that he was going to take some friends to a party in the area and that she could come along. She agreed.

When Peterson got into the car next to Smith, Montgomery heard some counting of money but he was not aware of the reason for it. He testified that he did not know that drugs were in the car, that he did not place any drugs under the hood, and that he knew nothing of a drug sale to Peterson.

Prior to trial, the state notified Montgomery that it would offer *Spreigl* evidence of two past convictions of possession of a controlled substance from 1993 and 1998 respectively. In discussions outside the presence of the jury, the prosecutor noted the court's obligations regarding the offer of the *Spreigl* evidence:

> The court has to make a finding that under the circumstances of the case the state's case is particularly weak or that it completes a pattern of behavior that would be of assistance to the jury, and the admission of the prior convictions would not be unduly prejudicial to the defendant.

Opposing the *Spreigl* offer, defense counsel argued that the prior crimes were for possession and not a sale and thus did not show any pattern of behavior and that they were remote in time.

Without analysis or disclosure of the basis for the admission of the evidence, the court stated, "Well, I'm going to permit it." The prosecutor later informed the court that it needed "to make findings on the record, articulated ... as to why you are allowing this particular *Spreigl* evidence to come in." The court responded that the

> findings are predicated on the fact that the state's case is largely circumstantial, which in and of itself is going to make a finding that the case is weak and that the two convictions are relevant to show opportunity, intent, knowledge and common scheme or plan, and it has probative value, and the probative value outweighs the potential of unfair prejudice to the defendant.

The court then indicated that it would give a cautionary instruction that the *Spreigl* evidence "is admitted only for your consideration concerning whether Keith Edward Montgomery is telling the truth in this case" and the evidence cannot be considered as to his "character or conduct except as you may think it reflects his believability." The court gave that instruction before the state offered the *Spreigl* evidence.

Montgomery alleges three instances of prosecutorial misconduct during the trial. First, the prosecutor began his opening statement by saying, "The headline could have read, 'Twin Cities Drug Dealer Caught in Kasson Sting.'" Second, during his cross-examination of Montgomery, the prosecutor asked questions about Shawntan Smith's failure to testify:

Q. We don't hear that from Shawntan, do we?

A. Pardon me?

Q. We hear that from you, right?

A. Yes

Q. And you know Shawntan Smith is refusing to talk to anybody, don't you?

A. Like ...

Q. You know that, don't you?

A. What do you mean?

Q. He is refusing to talk.

A. No, I don't know that.

Q. And you didn't subpoena him, did you?

A. No, I did not.

Q. And that's because he is afraid of you, isn't it?

The court then sustained defense counsel's objection. Third, Montgomery claims the prosecutor disparaged the defense theory during final argument.

Montgomery's final contention is that the court abused its discretion by denying his motion for a mitigated dispositional or durational sentencing departure.

## ISSUES

1. Did the district court err by admitting *Spreigl* evidence without determining a legitimate purpose for the evidence and without conducting a rule 403 balancing test?

2. Did the prosecutor commit misconduct by suggesting that appellant was a drug dealer, that appellant had a duty to call a witness to testify, and that appellant was of a violent nature?

## ANALYSIS

*Spreigl Evidence*

■ We review the admission of evidence of other crimes, wrongs, or acts for an abuse of discretion. *State v. Blom*, 682 N.W.2d 578, 611 (Minn.2004) (citing *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998)).

Minn. R. Evid. 404(b) precludes evidence of other crimes, wrongs, or acts if it is offered to prove a person's character and conduct in conformity with that character. But the rule allows such evidence for other purposes, such as showing mo-tive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In Minnesota, admissible 404(b) evidence is known as *Spreigl* evidence after *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

■ There are several procedural requirements that must be met before *Spreigl* evidence may be admitted, only two of which are argued by Montgomery as being at issue here: (1) the evidence "shall not be admitted in a criminal prosecution unless ... the state clearly indicates what the evidence is being offered to prove"; *Kennedy*, 585 N.W.2d at 389; and (2) the court must assess and evaluate the evidence under Minn. R. Evid. 403 to de-termine whether it "will create unfair prejudice...." *State v. Bolte*, 530 N.W.2d 191, 197 (Minn.1995).

■ The only thing that approximates a disclosure of the purpose for which the *Spreigl* evidence was being offered is the state's suggestion that "it completes a pattern of behavior." Perhaps the state was alluding to the "common scheme or plan" provision of rule 404(b). To fit that provision, the *Spreigl* evidence must be "sufficiently or substantially similar to the charged offense—determined by time, place and modus operandi." *Kennedy*, 585 N.W.2d at 391 (citing *State v. Cogshell*, 538 N.W.2d 120, 123–24 (Minn.1995)). The *Spreigl* evidence here does not satisfy the test of time, place, and modus operandi. The convictions are relatively remote, especially the first which occurred nine years before the trial. The place of neither conviction was disclosed. And there is no similarity whatever between the posses-sion crimes and the instant sale crimes. We know only that on two prior occasions Montgomery possessed a controlled sub-stance. The record does not indicate that the substance was cocaine, and nothing

suggests that the prior crimes involved any effort or intent to sell whatever controlled substance Montgomery possessed. There was no showing of sufficiently similar circumstances between the past crimes and the crimes charged to satisfy the modus operandi requirement. The state failed to show any legitimate purpose for the admission of the *Spreigl* evidence. Without such a showing, the evidence smacked of character evidence, inviting the inference that Montgomery has been connected with drugs in the past and he probably was connected with drugs on this occasion.

■ The court admitted the evidence for a variety of ostensible rule 404(b) purposes. However, it did so without any analysis of the legitimacy of any of those purposes. Montgomery's defense was that he did not know that cocaine was under the hood of the car. The court indicated that the prior crimes showed opportunity, intent, knowledge, and common scheme or plan. We have already concluded that there was no basis for admission under the common scheme or plan provision. And we are not persuaded that Montgomery's possession of drugs several years earlier showed that he had an opportunity to sell drugs now, that he intended to do so (unless he could be classified impermissibly as a drug dealer), or that he knew there were drugs under the hood of the car.

■ Implicit in the requirement that the proponent of *Spreigl* evidence disclose its purpose is that there also be some showing or determination that the evidence reasonably and genuinely fits that purpose. It is not sufficient simply to recite a 404(b) purpose without also demonstrating at least an arguable legitimacy of that purpose. Furthermore, although the district court has the ultimate responsibility for determining admissibility, the party offering the *Spreigl* evidence has the

burden of persuading the court that all *Spreigl* requirements and safeguards are met. *Blom,* 682 N.W.2d at 611.

The record also shows that the court made an inadequate analysis of the possible prejudice to the defendant if the prior crimes were admitted. The supreme court has noted this obligation of district courts when a party desires to offer *Spreigl* evidence:

> In determining admissibility, the trial court should engage in a balancing of factors such as the relevance or probative value of the evidence, the need for the evidence, and the danger that the evidence will be used by the jury for an improper purpose; or that the evidence will create unfair prejudice pursuant to Minn. R. Evid. 403.

*Bolte,* 530 N.W.2d at 197 (footnotes omitted).

■ The district court correctly determined that the state's case was weak, depending mostly on circumstantial evidence. We also note that credibility was the central issue in the case and that all three principals were subject to attack on that issue. Peterson had been rejected by Montgomery and arguably had a motive to testify unfavorably to him. Harper lied to the police in giving his initial statement and admitted at trial that he lied. Montgomery obviously had a self-interest in fabricating a story to escape conviction. Under *State v. DeWald,* 464 N.W.2d 500, 504 (Minn.1991), a court considering the admissibility of *Spreigl* evidence should make assessments as to the strength of the state's case and the state's need for the evidence to meet its burden of proof.

■ But even if the state's case is weak, rule 403 requires the court to determine whether the probative value of the *Spreigl* evidence is substantially outweighed by the danger of unfair prejudice. Minn. R.

Evid. 403. Unfair prejudice "refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Bolte*, 530 N.W.2d at 197 n. 3 (citing *State v. Cermak*, 365 N.W.2d 243, 247 n. 2 (Minn.1985)).

The state's proposition here is that Montgomery was a drug seller. Considering that Montgomery was in someone else's car, had no drugs in his actual possession, did not receive the buy money, and did not become involved in the drug-transaction conversation in the car, the state's contention was difficult to prove. But if the jury became aware that Montgomery had two prior felony convictions for being involved with drugs, it reasonably could conclude that he is the type of person likely to participate in a drug sale. However, this would be impermissible character evidence and would unfairly prejudice him. We hold that the *Spreigl* evidence, on this record, was not admissible and the district court abused its discretion in allowing it.

█ Although Montgomery did not complain about the court's *Spreigl* limiting instruction, we note two further errors. First, the court gave the wrong instruction, stating that the jury could consider the other crimes only to determine Montgomery's credibility. This is an impeachment instruction, albeit abbreviated, similar to that in 10 *Minnesota Practice*, CRIMJIG 3.15 (2004). The *Spreigl* instruction is found in *10 Minnesota Practice*, CRIMJIG 2.01 (2004) and indicates, in part, that the other-crimes evidence is offered to assist the jury "in determining whether the defendant committed those acts with which [he] is charged in the complaint." Thus, the jury may use the *Spreigl* evidence not to test and weigh a defendant's believability but as circumstantial evidence that he committed the crime charged.

The court's second instructional error was that it gave the instruction only just before the evidence was received and did not repeat it in the final charge as required by caselaw. *State v. Billstrom*, 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967).

*Prosecutorial Misconduct*

█ A conviction may be reversed for prosecutorial misconduct only "when the misconduct, considered in the context of the trial as a whole, was so serious and prejudicial that the defendant's constitutional right to a fair trial was impaired." *State v. Johnson*, 616 N.W.2d 720, 727–28 (Minn.2000).

█ In assessing the probable impact of prosecutorial misconduct, we apply two possible standards. If the misconduct was serious, we determine whether it was harmless beyond a reasonable doubt. *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000). If the conduct was less than serious, we consider whether it likely played a substantial part in influencing the jury to convict. *Id.*

a. *Opening Statement*

█ An opening statement may not contain argument but rather must be confined to a description or outline of the facts a party expects to prove:

The prosecution may outline the facts in the opening statement which he expects to prove to aid the jury in following the testimony. This statement is not evidence but a recital of factual claims expressed with an intention and expectation that testimony will be offered and received to support them.

*Tucker v. State*, 309 Minn. 482, 486, 245 N.W.2d 199, 202 (1976) (quotation omitted).

█ Furthermore, in describing the expected proof, the prosecutor must re-

frain from language that might inflame the passions and prejudices of the jury. *State v. Salitros*, 499 N.W.2d 815, 817 (Minn. 1993). And appellate courts "will pay special attention to statements that may inflame or prejudice the jury where credibility is a central issue." *State v. Porter*, 526 N.W.2d 359, 363 (Minn.1995) (citation omitted).

When the prosecutor here began his opening statement with a reference to an imaginary newspaper headline announcing that a Twin Cities drug dealer was caught in a small-town sting, it might be argued that that is precisely what the prosecutor intended to prove and, in hindsight, did prove. But the language was inflammatory and could have little effect other than to arouse jurors' negative emotions toward Montgomery. As such, the statement was prosecutorial misconduct.

Before the opening statements, the district court clearly instructed the jury that what the lawyers say is not evidence and that the evidence would come only from the witnesses and exhibits. "We presume that the jury followed the court's instruction." *State v. Taylor*, 650 N.W.2d 190, 207 (Minn.2002) (citation omitted). Even though the prosecutor's characterization of the case was inflammatory, considering that the statement occurred at the very outset of the trial and that the court had just previously instructed the jury that statements by the lawyers could not be considered evidence, we hold that the misconduct was of the less-than-serious type and did not likely play a substantial part in influencing the verdict.

b. *Cross–Examination*

Montgomery argues that the prosecutor's cross-examination of him implied that he had a duty to present evidence and implied that he was of bad character. We agree.

In a criminal case, the state has the burden of proving every element of the charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A defendant is not required to present evidence in his own behalf, and any suggestion or insinuation to the contrary is improper. *State v. Brechon*, 352 N.W.2d 745, 748 (Minn.1984). Furthermore, "a prosecutor may not comment on a defendant's failure to call witnesses." *State v. Gassler*, 505 N.W.2d 62, 69 (Minn.1993).

Of the four principals in this case, only three testified. Shawntan Smith did not testify. When the prosecutor cross-examined Montgomery about Smith's failure to testify and then obtained Montgomery's affirmative answer to the question, "And you didn't subpoena him, did you?" he clearly implied that, if Montgomery were going to be believed, he had a duty to subpoena Smith to testify. This was improper.

And when the prosecutor sought to explain Smith's refusal to testify by asking "And that's because he is afraid of you, isn't it?" the prosecutor suggested that Montgomery has a violent character. Subject to some exceptions, character evidence of an accused is not admissible. Minn. R. Evid. 404(a). No exception applies here. Even though the question, which was not answered, was not itself evidence, it was likely to inflame the prejudices of the jury against Montgomery.

These cross-examination questions were serious prosecutorial misconduct in that one suggested that Montgomery had a duty to present evidence on his own behalf and the other insinuated that he had a sufficiently bad trait of character that even a principal witness was afraid to come to court to testify. Both questions were of a

nature that infringed Montgomery's right to a fair trial.

### c. *Prosecutor's Closing Argument*

■ Montgomery claims the prosecutor disparaged his theory of defense, suggesting that he came up with a story of "plausible deniability," and that he belittled Montgomery's testimony.

We do not find that the prosecutor improperly disparaged Montgomery's defense. Rather, he argued that it is part of a drug dealer's modus operandi to construct the drug sale in such a manner that he will not be implicated. This was not improper.

Nor do we find that the prosecutor belittled Montgomery's testimony. Instead, he pointed out inconsistencies and implausibilities in what Montgomery said and in his theory of defense. This was not improper.

### Cumulative Error

■ The *Spreigl* evidence was improperly admitted and served to support an impermissible character inference. The limiting instruction was substantively incorrect. The prosecutor called Montgomery a drug dealer at the opening of the trial, insinuated that he was of sufficiently violent character to prevent another witness to testify, and suggested that Montgomery had a burden to present evidence in his own behalf.

Although the *Spreigl* and cross-examination errors are likely sufficient standing alone to warrant a reversal, we hold that surely the cumulative effect of all of the errors was to deprive Montgomery of a fair trial. *See State v. Duncan*, 608 N.W.2d 551, 558 (Minn.App.2000) (cumulative effect of trial errors, including prosecutorial misconduct, warranted a new trial). As a result, Montgomery is entitled to a new trial.

### Sentencing

Because Montgomery is entitled to a new trial under our disposition of the *Spreigl* and prosecutorial misconduct issues, we need not reach the question of the propriety of the sentence.

### D E C I S I O N

Because the district court admitted unfairly prejudicial *Spreigl* evidence and because the prosecutor committed serious misconduct, appellant is entitled to a new trial.

**Reversed and remanded.**