**STATE of Minnesota, Respondent,**

v.

**Kenneth William CRANE, Appellant.**

No. A08–0377.

Court of Appeals of Minnesota.

June 2, 2009.

Lori Swanson, Attorney General, St. Paul, Eileen Wells, Mankato City Attorney, Christopher D. Cain, Assistant City Attorney, Mankato, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, for appellant.

Considered and decided by JOHNSON, Presiding Judge; HALBROOKS, Judge; and ROSS, Judge.

## OPINION

HALBROOKS, Judge.

Before his trial for third-degree driving while impaired (DWI), Kenneth William Crane moved the district court to order the prosecution to disclose the computer source code for the Intoxilyzer breath-test machine. The district court denied that motion on the basis that the state did not possess or control the source code, and a jury found Crane guilty on two counts of third-degree DWI. On appeal, Crane argues that the district court erred in its discovery ruling. We conclude that the district court's ruling was erroneous under the supreme court's recent ruling in *State v. Underdahl,* but we affirm the conviction because the ruling was not prejudicial to Crane.

## FACTS

On the evening of January 18, 2007, emergency medical personnel in Mankato found Kenneth Crane passed out in a vehicle that was stopped with its engine running. A police officer from the Mankato Department of Public Safety observed that Crane appeared to be intoxicated. Crane failed a field sobriety test and was arrested. At the Mankato Law Enforcement Center, Crane consented to a breath test. An officer administered a breath test using the Intoxilyzer 5000EN, which is the breath-test machine approved for use in Minnesota. *See* Minn. R. 7502.0420, subp. 3 (2005). The test revealed that Crane had an alcohol concentration of .14.

The state charged Crane with two counts of third-degree DWI. In April 2007, Crane moved the district court under Minn. R.Crim. P. 9.01, subd. 2(1), to order the state to disclose the computer source code for the Intoxilyzer. The district court deferred ruling on that motion until the supreme court issued its decision in

*Underdahl v. Comm'r of Pub. Safety (In re Comm'r of Pub. Safety)*, 735 N.W.2d 706 (Minn.2007) (*Underdahl I*). After the supreme court issued its decision in *Underdahl I*, the state submitted an affidavit of Glenn Hardin, Toxicology Supervisor at the Minnesota Bureau of Criminal Apprehension Forensic Science Laboratory (BCA). Hardin stated in his affidavit, "The source code for the Intoxilyzer 5000EN is not now, nor has it ever been, in the possession of the BCA" and that the only person in "actual possession" of the source code is the manufacturer, CMI, Inc.

In August 2007, the district court considered Crane's motion in light of *Underdahl I* and the Hardin affidavit. Based on the affidavit, the district court concluded that no governmental agency possessed or controlled the source code and therefore denied Crane's motion. But the district court noted that it would agree to issue a subpoena to CMI if Crane requested it.

The case was tried to a jury in October 2007, and the jury found Crane guilty on both counts of third-degree DWI. Without specifying which count it sentenced on, the district court sentenced Crane to 180 days in jail and a $900 fine, with 150 days stayed and work release granted. Crane appeals.

## ISSUE

Did the district court err in denying Crane's motion for disclosure of the Intoxilyzer source code?

## ANALYSIS

### I.

■■■■ Crane argues that the district court abused its discretion in denying his motion to order disclosure of the Intoxilyzer source code. A district court has "wide discretion" in ruling on discovery requests and will not be reversed absent a "clear abuse of that discretion." *Underdahl I,* 735 N.W.2d at 711 (quotation omitted). But when a district court's pretrial order is based on factual findings, we review those factual findings for clear error. *State v. Gauster,* 752 N.W.2d 496, 502 (Minn.2008). Interpretation of the rules of criminal procedure is a question of law reviewed de novo. *State v. Johnson,* 744 N.W.2d 376, 379 (Minn.2008).

### A. Discovery Ruling

The rule of criminal procedure under which Crane moved for disclosure of the source code provides:

> Upon motion of the defendant, the court for good cause shown shall require the prosecuting attorney ... to assist the defendant in seeking access to specified matters relating to the case *which are within the possession or control of an official or employee of any governmental agency,* but which are not within the control of the prosecuting attorney. The prosecuting attorney shall use diligent good faith efforts to cause the official or employee to allow the defendant access at any reasonable time and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made.

Minn. R.Crim. P. 9.01, subd. 2(1) (emphasis added). Thus, some official or employee of a government agency must possess or control the source code in order for Crane to obtain relief under rule 9.01, subdivision 2(1). Our analysis of the possession issue is guided by the supreme court's recent decision in *State v. Underdahl,* 767 N.W.2d 677, 2009 WL 1150093 (Minn. Apr.30, 2009) (*Underdahl II*), *pet. for reh'g filed* (Minn. May 5, 2009). In *Underdahl II,* the supreme court considered a consolidated appeal by the state from two district court orders granting motions for discovery of the source code.

767 N.W.2d at 679–80, 2009 WL 1150093, at *2. The supreme court framed the issue on appeal as "whether the district courts' findings that the State had possession or control of the source code were clearly erroneous." *Id.* at 686, 2009 WL 1150093, at *8. Although it acknowledged the ongoing federal court litigation between the state and CMI regarding the parties' rights to the source code, the supreme court concluded that the district courts' findings in both cases that the state had possession or control of the source code was not error. *Id.* at 687 & n. 7, 2009 WL 1150093, at *8 & n. 7. The supreme court based its ruling on two grounds. First, the supreme court noted, as it did in *Underdahl I,* that based on the language of the requests for proposal (RFP), which contained the terms of the agreement between the state and CMI, "any copyrightable material would 'be the property of the State and are by this Contract assigned to the State.'" *Id.* at 686 & n. 6, 2009 WL 1150093, at *8 & n. 6 (quoting *Underdahl I,* 735 N.W.2d at 708). Second, the supreme court reasoned that the defendants' alternative means of accessing the source code, if any existed, were irrelevant for the purpose of ruling on the motion because "Rule 9.01, subd. 2(1), only speaks to the State's obligation to assist a defendant in seeking access to material the State possesses, aside from the defendant's possible access." *Id.* at 687, 2009 WL 1150093, at *8.

■ In this case, the district court made a factual finding that the source code was not within the possession or control of an employee of any governmental agency because "the manufacturer won't provide it." The district court based its finding solely on the Hardin affidavit, which avers that the state had not been able to obtain the source code from CMI. But this affidavit does not satisfy the state's burden, because in *Underdahl II,* the supreme court

concluded that the state possessed the source code, notwithstanding the fact that the state was engaged in ongoing litigation with CMI over access to the source code. *Id.* at 687 & n. 7, 2009 WL 1150093, at *8 & n. 7. As noted above, the supreme court based this conclusion in part on the same language in the RFP that the supreme court had relied on in *Underdahl I* to affirm the denial of the commissioner's petition for a writ of prohibition. 735 N.W.2d at 713. *Underdahl I* was decided one month before the district court in this case ruled on Crane's motion. Thus, we conclude that the district court's finding regarding possession of the source code was clearly erroneous. Neither *Underdahl II* nor our ruling forecloses a different result in future cases based on further developments in litigation between the state and CMI. *See Underdahl II,* 767 N.W.2d at 687 n. 7, 2009 WL 1150093, at *8 n. 7 (permitting state to supplement record with proposed settlement agreement in federal lawsuit between state and CMI).

Because the district court's ultimate ruling on Crane's motion was based on an erroneous factual finding, the district court's denial of Crane's motion was an abuse of discretion.

**B. Remedy**

■ We turn next to consider the proper remedy for the district court's erroneous discovery ruling. In some cases when a criminal defendant has improperly been denied discovery, appellate courts have reversed the conviction and remanded for a new trial after determining that the denial of discovery prejudiced the defendant. *See State v. Hunt,* 615 N.W.2d 294, 302 (Minn.2000); *State v. Zeimet,* 310 N.W.2d 552, 553 (Minn.1981). In other cases, appellate courts have applied the harmless-error test, holding that a new trial is not

necessary unless the denial of discovery is "prejudicial [to] the defendant's right to a fair trial." *State v. Miller*, 754 N.W.2d 686, 705–07 (Minn.2008); *see also State v. Roan*, 532 N.W.2d 563, 571 (Minn.1995) ("Even if the trial court erred in quashing the subpoena, a new trial is required only if the ... nondisclosure was material to the outcome of the verdict.")

■ In light of the fact that cases addressing the denial of a defendant's right to discovery consistently address the prejudice to the defendant in crafting an appellate remedy, we examine whether the district court's erroneous discovery ruling in this case was prejudicial error. Error related to discovery rulings is harmless beyond a reasonable doubt if the jury's verdict "was surely unattributable to the error." *State v. Palubicki*, 700 N.W.2d 476, 489 (Minn.2005); *see also Miller*, 754 N.W.2d at 705.

In this case, Crane was convicted of third-degree DWI in violation of Minn. Stat. § 169A.26, subd. 1 (2006). Under subdivision 1, a person is guilty of third-degree DWI upon proof of a violation of Minn.Stat. § 169A.20, subd. 1 (2006), and one aggravating factor as defined by Minn. Stat. § 169A.03, subd. 3 (2006). Minn. Stat. § 169A.20, subd. 1, provides that no person may

> drive, operate, or be in physical control of any motor vehicle within this state or on any boundary water of this state:
> (1) when the person is under the influence of alcohol; [or]
> . . . .
> (5) when the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.08 or more[.]

The jury found Crane guilty of third-degree DWI under both subsection 1 and subsection 5. We cannot conclude that the jury's verdict with respect to third-degree DWI under subsection 5 was "surely unattributable" to the district court's denial of the source code because it is possible that obtaining the source code would have enabled Crane to challenge the reliability of the Intoxilyzer breath-test result, the state's only evidence regarding his alcohol concentration. *Palubicki*, 700 N.W.2d at 489.

With respect to the verdict under subsection 1, the jury was presented with a considerable amount of evidence apart from the Intoxilyzer breath-test result to prove that Crane was "under the influence of alcohol." Minn.Stat. § 169A.20, subd. 1(1). At trial, a fire fighter who responded to the 911 call testified that Crane was slumped in the driver's seat of his car while it was running. The arresting officer testified that upon arriving at the scene, he observed Crane exhibiting several indicia of intoxication, including a "strong odor of an alcoholic beverage," bloodshot and watery eyes, and slurred speech. Crane told the officer that he had been drinking at a bar for at least one hour earlier that evening and that he had parked his car to "sober up." Upon administering the Horizontal Gaze Nystagmus test, the officer observed all six indicators of impairment.

Based on the strength of this evidence, we conclude that the jury's guilty verdict for third-degree DWI under Minn.Stat. § 169A.26, subd. 1, was "surely unattributable" to the district court's discovery ruling. *Palubicki*, 700 N.W.2d at 489. Therefore, the district court's erroneous ruling does not warrant a new trial. *See Miller*, 754 N.W.2d at 705–07; *Roan*, 532 N.W.2d at 571.

**II.**

Crane raises several pro se arguments regarding his conviction and sentence. Each is addressed in turn.

## A. Reasonable Articulable Suspicion for Stop

■ Crane argues that the state did not present sufficient evidence at the *Rasmussen* hearing to demonstrate that the stop of his vehicle was lawful. "A stop is lawful if it is based on a reasonable and articulable suspicion of ongoing criminal activity." *Knapp v. Comm'r of Pub. Safety,* 610 N.W.2d 625, 628 (Minn.2000) (quotation omitted). Indicia of intoxication give an officer reasonable articulable suspicion that a driver is operating a vehicle while under the influence. *See Dep't of Pub. Safety v. Juncewski,* 308 N.W.2d 316, 321 (Minn.1981). "Generally an officer responding to a call to investigate someone unconscious or sleeping in a vehicle is justified in investigating the welfare of that individual." *State v. Lopez,* 698 N.W.2d 18, 23 (Minn.App.2005).

The complaint, which was admitted at the *Rasmussen* hearing, indicates that the investigation leading to Crane's arrest was prompted by a 911 call from a concerned citizen who observed Crane unconscious in a parked car that was running. The complaint also indicates that Crane exhibited several indicia of intoxication. Crane did not introduce evidence to contradict the information in the complaint. Consequently, the evidence was sufficient to support the district court's conclusion that the officer's investigation was lawful.

## B. Prosecutorial Error

■ Crane argues that the prosecutor engaged in misconduct by referring to him as a "slumper" during the trial. A prosecutor should not "refer to facts not in evidence," *State v. McArthur,* 730 N.W.2d 44, 53 (Minn.2007), and a prosecutor's statements may not be "calculated to inflame the passions or prejudices of the jury," *State v. Salitros,* 499 N.W.2d 815, 817 (Minn.1993) (quotation omitted). Nev-

ertheless, a prosecutor may make "reasonable inferences from [the] evidence" presented at trial. *State v. Young,* 710 N.W.2d 272, 281 (Minn.2006) (quotation omitted).

During opening statement, the prosecutor stated, "this is what we typically call in law enforcement . . . a slumper case where [a] person has consumed alcohol and then either fallen asleep at the wheel or just passed out." The prosecutor's characterization of the facts mirrors the evidence presented at trial. Indeed, one of the citizens whose concern prompted the 911 call testified that she made her report after seeing Crane "slumped over the steering wheel" of his car.

Because the prosecutor's statement was a reasonable inference based on the evidence presented at trial and was not "calculated to inflame the passions or prejudices of the jury," it was not misconduct. *Salitros,* 499 N.W.2d at 817 (quotation omitted).

## C. Sentencing

■ Crane argues that the district court improperly imposed a harsher sentence on him because he exercised his right to a trial. At sentencing, Crane's counsel opposed the recommended sentence, arguing that Crane believed he was making the right decision by sleeping in his car rather than driving. In response, the district court stated, "My memory's a little bit foggy. Isn't . . . the sentence that's recommend by [the probation officer] substantially the plea offer that was provided before we had the trial? I can't recall."

Based on the context of this comment, it appears that the district court was explaining to Crane that his sentence was similar to the sentence he would have received had he pleaded guilty. Thus, the record

does not support Crane's argument that he received a more severe sentence for having exercised his right to a trial.

## DECISION

The district court's denial of the discovery motion was an abuse of discretion because it was based on the erroneous finding that the state did not possess the Intoxilyzer source code. Nevertheless, a new trial is not warranted because Crane was not prejudiced by the error.

**Affirmed.**

JOHNSON, Judge (concurring specially).

I respectfully disagree with part I.A. of the opinion of the court, which concludes that the district court erred by denying Crane's discovery motion. In light of the factual record before the district court in this case, as well as the uncertainty concerning whether the state had or has possession or control of the Intoxilyzer source code, I would conclude that the district court did not err by denying Crane's motion. Accordingly, I concur in the judgment.

Crane's discovery motion is based on rule 9.01, subdivision 2(1), of the Minnesota Rules of Criminal Procedure, which authorizes a district court, if certain conditions are satisfied, to "require the prosecuting attorney ... to assist the defendant in seeking access to specified matters relating to the case which are within the possession or control of an official or employee of any governmental agency, but which are not within the control of the prosecuting attorney." A defendant is not entitled to such an order unless he has shown that the source code is "within the possession or control of an official or employee of any governmental agency." Minn. R.Crim. P. 9.01, subd. 2(1). Crane did not submit any

evidence to the district court in support of his motion. The state submitted only one document, an August 2, 2007, affidavit of Glenn G. Hardin. The opinion of the court has identified the pertinent parts of Hardin's affidavit. In light of this factual record, the district court, in my view, did not err by concluding, for purposes of this case, that the state does not have possession or control of the source code.

The district court's ruling in this case is not incompatible with the supreme court's recent decision in *State v. Underdahl*, 767 N.W.2d 677, 2009 WL 1150093 (Minn. Apr. 30, 2009) (*Underdahl II*), *pet. for reh'g filed* (Minn. May 5, 2009). The supreme court framed the issue in that case as "whether the district courts' findings that the State had possession or control of the source code were clearly erroneous." *Id.* at 686, 2009 WL 1150093, at *8. The supreme court analyzed only one piece of evidence—a "request for proposal (RFP) issued by the State when replacing the previous version of its breath-test instrument"—and reasoned simply that the RFP "supports [the district courts'] conclusions that the State had possession of the source code." *Id.* The supreme court concluded merely that "it was not an abuse of discretion for the district courts to find that the source code was in the possession or control of the State." *Id.* The supreme court's language reveals that it did not intend to decide the possession-or-control issue as a matter of law. Rather, the supreme court's language indicates that the issue is, at least at the present time, to be decided on a case-by-case basis. The language used by the supreme court further indicates that a district court's ruling on the issue is subject to a deferential standard of review. If there were only one permissible way to resolve the issue of possession or control of the source code,

the supreme court would have so stated in clear terms.

The supreme court's opinion in *Underdahl II* provides additional reasons why a district court's ruling on the issue of possession or control of the Intoxilyzer source code is entitled to deference. Simply put, it is apparent that the rulings of the district courts that were affirmed in *Underdahl II* are counterfactual. It seems well-accepted at the moment that the state does not have *actual* possession or control of the source code in the sense of having the ability unilaterally to produce the source code to a defendant in a DWI case or to cause some other person to do so. The supreme court acknowledged the existence of a pending federal lawsuit in which the state has sued the manufacturer of the Intoxilyzer to obtain some form of rights to or disclosure of the source code. *Id.* at 687 n. 7, 2009 WL 1150093, at *8 n. 7. It appears that the respective rights and obligations of the state and the Intoxilyzer manufacturer are contingent on the future outcome of that lawsuit.[1] Although the pending federal lawsuit was commenced after the district court ruled on Crane's motion, the prospect of such a lawsuit was mentioned by the supreme court before the district court's ruling. *Underdahl v. Commissioner of Pub. Safety (In re Commissioner of Pub. Safety)*, 735 N.W.2d 706, 713 (Minn.2007) (*Underdahl I*). In any event, *Underdahl II* should not be interpreted to have settled the issue of posses-

sion or control of the source code in a manner that deprives a district court of its factfinding role or its discretion to resolve discovery disputes according to the circumstances of a particular case. The supreme court's holding that two district courts did not clearly err or did not abuse their discretion by concluding that the state *has* possession or control of the Intoxilyzer source code, when it is simultaneously acknowledged that the state does *not* have actual possession or control of the source code, is a strong indication that a district court's discretion when considering this issue is exceedingly broad.

The indeterminate nature of the state's rights and interests in the source code also is illustrated by the supreme court's previous discussion of the issue. In *Underdahl I*, in affirming this court's denial of the state's petition for a writ of prohibition, the supreme court noted the parties' arguments concerning federal copyright law. 735 N.W.2d at 712. But the supreme court refrained from even attempting to resolve those arguments, stating, "we cannot decide the copyright issues raised" because the parties' briefs "provide only a superficial application of that law to the facts of this case" and because "the factual record before us is inadequate, thereby making any determination regarding either copyright theory impossible." *Id.* In *Underdahl II*, the supreme court did not conduct any analysis of intellectual property issues, and the supreme court also did

---

1. There is, however, reason to doubt whether the resolution of the pending federal lawsuit will conclusively determine whether the state has possession or control of the source code. The federal district court recently rejected a joint motion to approve a settlement agreement between the state and the manufacturer and to enter a consent judgment and permanent injunction. In doing so, the district court encouraged the parties to submit another settlement agreement. But the federal district court warned the parties that "[a]ny such settlement should also clearly indicate that it is not binding upon Minnesota state courts and not determinative of the issues such courts face in determining the right of litigants to Source Code access or relevance." *Minnesota ex rel. Campion v. CMI, Inc.*, No. 08–CV–603, slip op. at 8 (D.Minn. Feb. 9, 2009). The federal lawsuit is scheduled to be tried in May 2010. *Minnesota ex rel. Campion v. CMI, Inc.*, No. 08–CV–603, slip op. at 3 (D.Minn. Mar. 5, 2009) (amended scheduling order).

not form any conclusions as to whether the state might have contractual rights or interests in the source code. Rather, the supreme court simply held that the district courts did not commit an abuse of discretion by finding, based on the RFP, that the state had possession or control of the source code. *Underdahl II*, 767 N.W.2d at 687, 2009 WL 1150093, at *8. Until the state's rights and interests with respect to the source code are clarified, or until the supreme court decides the issue on a statewide basis, two district court rulings based on a single document, unsupported by the complex legal analysis that the supreme court previously said is necessary, should not be elevated to a legal rule that binds the state in all DWI cases.

Even if one accepts the legal fiction that the state has possession or control of the Intoxilyzer source code because of its yet-to-be-vindicated property or contractual rights, the district court in this case did not abuse its discretion in light of the relief sought by Crane. By relying on subdivision 2(1) of rule 9.01, Crane did not seek an order that would ensure delivery of the source code.[2] Rather, Crane sought nothing more than the prosecuting attorney's "diligent good faith efforts to cause the official or employee [of another governmental agency] to allow the defendant access at any reasonable time and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made." Minn. R.Crim. P. 9.01, subd. 2(1). Based on the factual record before the district court, and based on the district court's general awareness of the source code issue in the wake of *Underdahl I* (which was decided only one month before the motion hearing, and which the district court expressly mentioned during the motion hearing), the district court appropriately recognized the practical reality that the prosecuting attorney would not be successful in obtaining the source code for Crane. The district court noted that the state "can't get" the source code because "the manufacturer won't provide it" and stated, "with that in mind, we're not going to order it." Crane does not argue that the prosecuting attorney's diligent good faith efforts would have caused a state official or agency to be successful in inducing the Intoxilyzer manufacturer to surrender the source code. Thus, in addition to the reasons stated above, I also would conclude that the district court did not abuse its discretion by denying Crane's motion because the district court reasonably determined that an order granting the motion would be futile.

In sum, I would conclude that the district court did not err by denying Crane's motion brought pursuant to rule 9.01, subdivision 2(1). On that basis, I join in the affirmance of Crane's conviction.

---

**2.** Such relief may be obtained pursuant to subdivision 2(3), which authorizes a district court to "require the prosecuting attorney to disclose to defense counsel . . . relevant material and information" that is actually possessed by the prosecuting attorney. *See* Minn. R.Crim. P. 9.01, subd. 2(3). Subdivision 2(1), however, by its express terms, applies only to matters that are *not* in the possession or control of the prosecuting attorney but *are* "within the possession or control of an official or employee of any governmental agency." Minn. R.Crim. P. 9.01, subd. 2(1). Crane did not move for, and could not have obtained, relief under subdivision 2(3) because it is undisputed that the prosecuting attorney in this case, the city attorney for the city of Mankato, does not have possession or control of the source code.