*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2056**

State of Minnesota,
Respondent,

vs.

Fernando Ulises Vargo Quinones,
Appellant.

**Filed January 4, 2016
Affirmed
Johnson, Judge**

Washington County District Court
File No. 82-CR-13-5188

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Peter S. Johnson, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Seth B. Cobin, Minneapolis, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Klaphake, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, §10.

**JOHNSON**, Judge

A Washington County jury found Fernando Ulises Vargo Quinones guilty of making a terroristic threat and domestic assault based on evidence that he threatened to kill his wife and that he physically assaulted the other members of his family. On appeal, Quinones argues that the prosecutor committed misconduct in her opening statement, during witness testimony, and in closing argument. We affirm.

## FACTS

Quinones and L.R. were married in 1994. They have two children, V.Q. and F.Q. On December 26, 2013, L.R. and the two children sought to remove their personal belongings from the family's residence in Woodbury and requested the assistance of law enforcement officers so that they could do so peacefully. When the officers arrived at the home, L.R. told them that, at a family therapy session on December 19, 2013, Quinones threatened to kill her if she divorced him. L.R. also said that, on December 23, 2013, Quinones told L.R. that he would make her homeless if she divorced him. The officers also spoke with V.Q. and F.Q., who stated that Quinones had become increasingly angry and violent and at times had struck both of them.

The next day, the state charged Quinones with one count of making terroristic threats, in violation of Minn. Stat. § 609.731, subd. 1 (2012), based on his conduct toward L.R. In February 2014, the state amended the complaint by adding three counts of domestic assault, in violation of Minn. Stat. § 609.2242, subd. 1(1) (2012), for his conduct toward L.R., V.Q., and F.Q., respectively.

2

Before trial, the state gave notice of its intent to introduce relationship evidence, and Quinones moved *in limine* to exclude evidence concerning prior incidents of physical or verbal altercations. The district court ruled that the state could introduce evidence of prior incidents that illuminate the nature of Quinones's relationship with his family but that the state could not introduce any evidence that went beyond the limits of admissible relationship evidence. *See* Minn. Stat. § 634.20 (2014). The district court stated, "There is going to be no . . . testimony purporting to establish an assaultive propensity for the Defendant." The prosecutor attempted to confirm her understanding of the court's ruling, as follows:

> PROSECUTOR: So my understanding is that the Court will allow evidence, or testimony of specific incidents, but not generally saying he is an assaultive aggressive person, that type of thing.
>
> COURT: That's correct. And I don't want any witness saying that.
>
> . . . .
>
> PROSECUTOR: I know there has been evidence, and it's in the report that the victims . . . the complainants are reporting that the defendant's behavior changed after coming back from Afghanistan. I think the word aggressive may have been used. Now, that's more specific about specific demeanor, and that's not a general statement. I want to clarify that that's different than making a general opinion about his nature and his propensity versus specific observation of behavior.
>
> COURT: Yeah, if that word comes in in the context of the specifics, I am not . . . that's not saying he has an assaultive propensity, but they are not going to say that either.

The case went to trial in August 2014. The state called four witnesses: L.R., V.Q., F.Q., and the police officer who was present at the family's home on December 26, 2013. L.R., V.Q., and F.Q. testified about their relationships with Quinones, his demeanor and attitude, and his lengthy history of assaultive behavior. They also testified about the December 19, 2013 therapy session in which Quinones loudly and aggressively told L.R. that if she left him, he was going to kill her.

L.R., V.Q., and F.Q. also testified to the incidents on which the charges were based. L.R. testified that, after the family therapy session, she returned to the family's residence with the children and locked herself in F.Q.'s room with F.Q. The next day, Quinones forced the door open and again threatened to kill her. L.R. testified that when she reached for a telephone to call 911, Quinones lunged at her. F.Q. intervened and ended the altercation. L.R. and V.Q. testified about an incident on October 23, 2013, in which Quinones grabbed V.Q. by her neck, slammed her into a closet, and slapped her across the mouth. F.Q. testified about an incident on October 31, 2013, in which Quinones hit him in the face with the back of his hand, resulting in a split lip. L.R., V.Q., and F.Q. testified about an incident (on an unspecified date) in which Quinones threw a hardcover math book at the back of F.Q.'s head because he was not doing well in school.

Quinones testified. He denied that he threatened or assaulted any member of his family. Regarding the December 19, 2013 therapy session, Quinones testified that L.R. stated that she wanted a divorce, that he said that would be OK, that the session ended, and that he left. He denied that he threatened to kill his wife. Regarding the October 23, 2013 incident with V.Q., he testified that he merely "bumped" her shoulder to get her

4

attention. He denied that he hit V.Q. and said that if he had hit her as she testified, she would have had worse injuries. Regarding the October 31, 2013 incident with F.Q., Quinones denied that any such incident occurred. Quinones called one other witness: the therapist who provided therapy services to the family on December 19, 2013.

The jury found Quinones guilty on all counts. In October 2014, the district court imposed concurrent sentences of 120 days in jail for making terroristic threats and 90 days in jail for each of the three counts of domestic assault, but stayed imposition of the sentences and placed Quinones on probation for five years. Quinones appeals.

## D E C I S I O N

Quinones argues that the prosecutor committed misconduct during trial. Specifically, Quinones argues that the prosecutor committed misconduct by eliciting inadmissible and prejudicial evidence from the state's witnesses and by making inflammatory comments during her opening statement and her closing argument.

The right to due process of law includes the right to a fair trial, and the right to a fair trial includes the absence of prosecutorial misconduct. *Spann v. State*, 704 N.W.2d 486, 493 (Minn. 2005); *State v. Ferguson*, 729 N.W.2d 604, 616 (Minn. App. 2007), *review denied* (Minn. June 19, 2007). If a prosecutor engages in misconduct during trial, an appellate court must determine whether the misconduct denied the appellant a fair trial. *State v. Dobbins*, 725 N.W.2d 492, 506 (Minn. 2006).

Quinones did not assert a prosecutorial-misconduct objection during trial to any of the conduct that he now argues was misconduct. Accordingly, this court applies a modified plain-error test. *State v. Carradine*, 812 N.W.2d 130, 146 (Minn. 2012). To

5

prevail under a plain-error standard, Quinones first must establish that there is an error and that the error is plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error is plain if it "contravenes case law, a rule, or a standard of conduct." *Id.* If Quinones were to satisfy that burden, the state would need to show that the error did not affect the appellant's substantial rights, *i.e.*, that "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted).

## A. Eliciting Evidence

We first consider Quinones's argument that the prosecutor committed misconduct by eliciting inadmissible evidence of his character in the form of his propensity for violence and intimidation.

A prosecutor may commit misconduct by intentionally asking questions that are calculated to elicit inadmissible evidence. *State v. Henderson*, 620 N.W.2d 688, 702 (Minn. 2001). A prosecutor does not commit misconduct by negligently asking questions that elicit inadmissible evidence or by asking questions that elicit admissible evidence. *State v. Fuller*, 374 N.W.2d 722, 725-27 (Minn. 1985). Accordingly, it is appropriate to first consider whether the evidence elicited by the prosecutor's alleged misconduct was admissible or inadmissible.

The district court resolved Quinones's motion *in limine* by ruling that the state could introduce evidence of prior incidents of domestic abuse to the extent that the evidence is admissible as relationship evidence pursuant to section 634.20 of the Minnesota Statutes. Quinones has not challenged that ruling on appeal. Yet much of the

evidence discussed in appellant's brief is admissible relationship evidence. To that extent, Quinones's prosecutorial-misconduct argument must fail.

Quinones also contends that the prosecutor engaged in misconduct by eliciting evidence that exceeds the scope of what was deemed admissible by the district court's *in limine* ruling. For example, Quinones challenges the prosecutor's eliciting of evidence that his behavior changed after he returned from military service in Afghanistan in 2011. More specifically, he challenges L.R.'s and V.Q.'s testimony that he generally was aggressive and soldier-like in the way in which he yelled at and threatened members of his family.

Because Quinones's prosecutorial-misconduct argument is based on the district court's *in limine* ruling, it would be easier to resolve if his trial counsel had objected to the prosecutor's questions at the time they were asked. Such an objection would have allowed the district court to determine whether the prosecutor was abiding by the *in limine* ruling, which would have provided this court with a more fulsome record for appellate review. But there was no such objection. Accordingly, this court must determine whether the prosecutor elicited evidence that plainly is beyond the scope of what was allowed by the district court's *in limine* ruling. *See Ramey*, 721 N.W.2d at 302. As we read the relevant portion of the transcript, it is clear that the district court ruled that the state's witnesses could not testify that Quinones has a propensity to commit assaults. It is less clear whether the district court ruled that the state's witnesses could not testify that Quinones exhibited aggressive behavior, though it appears that such evidence was deemed admissible. The evidence at issue on appeal, however, is not of the former type,

7

which plainly is inadmissible, but rather is of the latter type, which is not plainly inadmissible. Accordingly, Quinones has not demonstrated that the prosecutor intentionally elicited evidence that plainly was inadmissible under the district court's *in limine* ruling.

Thus, we conclude that the prosecutor did not plainly engage in misconduct by eliciting inadmissible evidence from the state's witnesses.

## B. Opening Statement and Closing Argument

We next consider Quinones's argument that the prosecutor committed misconduct by making inflammatory comments during her opening statement and her closing argument. Quinones contends that the prosecutor committed prosecutorial misconduct in two ways: (1) by referencing the period of Quinones's alleged conduct as an "era of terror" and (2) by commenting on Quinones's wearing of a military uniform during trial.

At the beginning of opening statements, the prosecutor stated to the jury that December 26, 2013, marked the "end of an era of terror and intimidation at the hands of the Defendant." At the beginning of closing arguments, the prosecutor repeated the statement by saying that December 26, 2013, "marked the end of an era of terror, intimidation, and abuse" by Quinones.

A prosecutor commits misconduct by inflaming the jury's passions and prejudices against the defendant. *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995). "When credibility is a central issue, we pay special attention to statements that may inflame or prejudice the jury." *State v. Morton*, 701 N.W.2d 225, 236 (Minn. 2005). An opening statement need not be "colorless," but it must be confined to a description or outline of

8

the facts a party expects to prove. *Id.* at 237; *State v. Montgomery*, 707 N.W.2d 392, 399 (Minn. App. 2005). In describing the anticipated evidence, the prosecutor must not use language that may inflame the passions and prejudices of the jury. *Id.* at 399-400. The state's argument must be based upon evidence produced at trial or the reasonable inferences from that evidence. *Morton*, 701 N.W.2d at 237; *see also State v. Crane*, 766 N.W.2d 68, 74 (Minn. App. 2009), *review denied* (Minn. Aug. 26, 2009). We look at a prosecutor's arguments "as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence." *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993) (considering misconduct in closing argument); *see also Montgomery*, 707 N.W.2d at 399-401 (considering misconduct in opening statement and closing argument). The appellate courts typically reverse for prosecutorial misconduct only in extreme circumstances. *See State v. McDaniel*, 777 N.W.2d 739, 752 (Minn. 2010).

In this case, the prosecutor's statements were based on the testimony of the state's witnesses and placed the evidence in context for the jury. *See Montgomery*, 707 N.W.2d at 399 (considering statements "in the context of the trial as a whole"). In general, the state's evidence portrayed a pattern of abusive behavior by Quinones. In particular, L.R. testified that she felt "terrorized." The use of "forceful yet apt" language to describe evidence is not prosecutorial misconduct. *State v. Torres*, 632 N.W.2d 609, 618 (Minn. 2001) (holding that descriptions of murder as "cold blooded killing" in which victim was "slaughtered" and "butchered alive" were not improper because prosecutor "hew[ed] to the definitions of" the words used). In this case, the prosecutor's characterization of the

9

evidence as an "era of terror" was not improper, especially in light of the fact that it was a brief, thematic statement at the beginning of her opening statement and her closing argument in a case alleging the making of a terroristic threat. Thus, the comment was not misconduct.

Quinones also contends that the prosecutor committed misconduct in her closing argument by commenting on his decision to wear a United States Army uniform throughout the trial. Earlier in the trial, outside the presence of the jury, the prosecutor addressed the district court on the issue by asserting that it was improper for Quinones to wear a military uniform if he was not performing official duties, although she equivocated as to whether the district court should prevent Quinones from wearing the uniform. The district court did not place any restrictions on Quinones's attire. In her closing argument, the prosecutor suggested to the jury that Quinones wore his military uniform to intimidate his family or to influence the jury. She stated: "Is he trying to make you believe that because he's in the military his behavior is excused . . . . That it's okay to do things like this just because you're a military man?" She expressed appreciation for everyone who serves in the military but added that it "doesn't mean that they have a free pass."

Quinones cites no authority for the proposition that a prosecutor may not comment on a defendant's attire. We are not aware of any such caselaw. The absence of caselaw on the subject indicates that the prosecutor did not plainly commit misconduct in doing so.

10

Thus, the prosecutor did not plainly commit misconduct by the comments made in her opening statement and her closing argument.

**Affirmed.**